ADVOCATE HEALTH AND HOSPITALS CORPORATION, d/b/a Advocate Trinity Hospital, Plaintiff-Appellant, v. BANK ONE, N.A., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—03—1539

Opinion filed April 19, 2004.—Rehearing denied June 21, 2004.

756

Anderson, Bennett & Partners, of Chicago (William C. Anderson III, Diane I. Jennings, and Alicia B. Perrone, of counsel), for appellant.

Mary S. Binder, of Chicago, for appellees.

JUSTICE McBRIDE delivered the opinion of the court:

The issues on appeal are whether the imposter defense contained in section 3—404(a) of the Illinois version of the Uniform Commercial Code—Negotiable Instruments (810 ILCS 5/3—404(a) (West 2000)) (UCC) may be properly asserted in a section 2—615 motion to dismiss a complaint for failure to state a claim (735 ILCS 5/2—615 (West 2000)) and whether the defense is factually applicable to the present dispute.

As detailed in this court's earlier opinion, *Blutcher v. EHS Trinity Hospital*, 321 Ill. App. 3d 131, 746 N.E.2d 863 (2001), one of the defendants in that action, a hospital, issued a $200,000 check in settlement of a patient's medical malpractice claim, after the patient's attorney falsely represented that he was authorized to settle the claim and tendered a notarized covenant not to sue bearing his client's forged signature. *Blutcher*, 321 Ill. App. 3d 131, 746 N.E.2d 863. The

client only learned of the settlement a year later, when he questioned why the hospital was no longer named as a defendant in an amended version of the complaint. *Blutcher*, 321 Ill. App. 3d at 134, 746 N.E.2d at 866. The circuit court granted the client's subsequent petition to vacate the falsified settlement agreement, vacate the order dismissing the hospital as a defendant, and reinstate the medical malpractice claim as to the hospital, and was affirmed on appeal. *Blutcher*, 321 Ill. App. 3d 131, 746 N.E.2d 863.

The present suit is the hospital's attempt to recoup the $200,000 debited to its checking account by its bank, defendant First National Bank of Chicago, n/k/a Bank One, N.A. (First National). The hospital alleged in a second amended complaint that the attorney forged his client's endorsement on the check, endorsed the check himself, deposited it into an account the attorney maintained with nonparty American National Bank of Chicago (American National), and kept the proceeds. The hospital claimed that First National's payment of the check bearing the client's forged endorsement was a breach of section 4—401 of the UCC (810 ILCS 5/4—401 (West 2000)). Section 4—401 indicates a bank may charge an item against a customer's account only if the item is "properly payable," and the official comment to that section indicates an item bearing a forged endorsement is not considered properly payable. 810 ILCS 5/4—401 (West 2000). The hospital gave no indication in its second amended complaint as to why it had issued the check to the attorney.

■ Those circumstances, however, were disclosed to the trial judge by First National, after it obtained a copy of a legal memorandum that the hospital had filed in the *Blutcher* proceedings in an effort to enforce the forged settlement agreement. First National relied on the facts disclosed in the hospital's *Blutcher* memorandum, in a successful section 2—615 motion to dismiss the hospital's UCC claim with prejudice (735 ILCS 6/2—615 (West 2000)). First National's argument was that since the forged covenant not to sue had induced the hospital to issue the check to the dishonest attorney, the UCC's imposter defense precluded the hospital from shifting its $200,000 loss to First National. Under the imposter defense, an endorsement in the name of the payee is "effective" if an imposter "by use of the mails or otherwise" has induced the drawer to issue the check to the imposter in the name of the payee. 810 ILCS 5/3—404(a) (West 2000). Title to the check passes as though the forged endorsement is genuine, and liability on the check lies with the drawer, rather than a depositary bank, such as American National in this instance, or a payor or drawee bank, such as First National in this instance, as long as there is no lack of good faith by the banks involved. See generally *First National*

*Bank of Chicago v. MidAmerica Federal Savings Bank,* 303 Ill. App. 3d 176, 707 N.E.2d 673 (1999). The rationale for the imposter defense is that "[t]he drawer is in the best position to avoid the fraud and thus should take the loss." 810 ILCS Ann. 5/3—404, Uniform Commercial Code Comment 3, at 211 (Smith-Hurd 1993). Furthermore, "because the drawer *** has increased the chance of forgery by dealing with a person who intends to commit a forgery, and has even permitted the forger to chose the name that he will forge, the drawer's *** culpability is deemed to outweigh that of subsequent purchasers." 4 Hawkland, Uniform Commercial Code Series § 3—405 (2002) (section 3—405 has been renumbered as section 3—404). Aside from the imposter defense, due to the client's forged signature on the check, the bank that accepted it, American National, would be liable for warranting to the subsequent bank, First National, that "all signatures on the item are authentic and authorized." 810 ILCS 5/4—207(a)(2) (West 2000); *Southern Provisions, Inc. v. Harris Trust & Savings Bank,* 96 Ill. App. 3d 745, 422 N.E.2d 33 (1981).

■ The hospital now argues that dismissal of its pleading pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)) (Code) based on the imposter defense (810 ILCS 5/3—404(a) (West 2000)) was a procedural error because the theory is an affirmative defense that does not appear on the face of the complaint and therefore may only be asserted under section 2—619 of the Code. 735 ILCS 5/2—619 (West 2000). The hospital contends this procedural error alone warrants reversal. We agree that the motion to dismiss should have been designated as the latter type of motion, because the bank was not arguing that the complaint provided insufficient facts to state a claim under section 4—401 of the UCC but, rather, that additional facts outside the face of the complaint established an affirmative defense under section 3—404(a) of the UCC which completely overcame the otherwise valid claim. *Senese v. Climatemp, Inc.,* 222 Ill. App. 3d 302, 582 N.E.2d 1180 (1991) (an affirmative defense is properly asserted in a section 2—615 motion only if the defense is apparent from the face of the complaint). However, the error does not justify reversal, because there is no indication that the hospital was prejudiced in any way by the misdesignation. In fact, the hospital recognized and argued in the trial court that the motion was mislabeled. *Neppl v. Murphy,* 316 Ill. App. 3d 581, 586, 736 N.E.2d 1174, 1179 (2000); *Illinois Graphics Co. v. Nickum,* 159 Ill. 2d 469, 484, 639 N.E.2d 1282, 1289 (1994); *Summers v. Village of Durand,* 267 Ill. App. 3d 767, 768-69, 643 N.E.2d 272, 274 (1994).

Nevertheless, the hospital also argues that even under section 2—619 standards the dismissal was improper because the bank failed

to prove its imposter defense. A section 2—619 motion is similar to a motion for summary judgment, although it is usually presented early in a case, before there is an opportunity for discovery. *Redwood v. Lierman*, 331 Ill. App. 3d 1073, 1091, 772 N.E.2d 803, 819 (2002). Section 2—619 allows for the dismissal of a complaint on the basis of issues of law or easily proven issues of fact (*Neppl*, 316 Ill. App. 3d at 585, 736 N.E.2d at 1109; *McCoy v. Illinois International Port District*, 334 Ill. App. 3d 462, 466, 778 N.E.2d 705, 709 (2002)), while disputed questions of fact are reserved for trial proceedings, if necessary. *McCoy*, 334 Ill. App. 3d at 466, 778 N.E.2d at 709. In a section 2—619 proceeding, the defendant bears the burden of proving any affirmative defense it relies upon. *Streams Condominium No. 3 Ass'n v. Bosgraf*, 219 Ill. App. 3d 1010, 1013, 580 N.E.2d 570, 573 (1991). Under section 2—619, the defendant admits to all well-pled facts in the complaint, as well as any reasonable inferences that may be drawn from those facts (*Streams Condominium*, 219 Ill. App. 3d at 1013, 580 N.E.2d at 573), but asks the court to conclude that there is no set of facts which would entitle the plaintiff to recover. *Wolf v. Bueser*, 279 Ill. App. 3d 217, 222, 664 N.E.2d 197, 200 (1996). As long as there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law, the complaint may be properly dismissed. *Wolf*, 279 Ill. App. 3d at 222, 664 N.E.2d at 201. The parties may ask the court to consider the pleadings, as well as any affidavits and deposition evidence (*Streams Condominium*, 219 Ill. App. 3d at 1014, 580 N.E.2d at 573), and to take judicial notice of facts contained in public records where such notice will aid in the efficient disposition of the case. *Village of Riverwoods v. BG Ltd. Partnership*, 276 Ill. App. 3d 720, 724, 658 N.E.2d 1261, 1265 (1995). Compare *Vulcan Materials Co. v. Bee Construction*, 96 Ill. 2d 159, 449 N.E.2d 812 (1983) (where facts are derived from pleadings in a case not involving the same parties and are not proved, judicial notice of those facts is improper). However, the court must construe all the pleadings and supporting matter in the light most favorable to the party opposing the motion for involuntary dismissal. *Wolf*, 279 Ill. App. 3d at 222, 664 N.E.2d at 200. On appeal, a dismissal pursuant to section 2—619 is addressed *de novo*. *Wolf*, 279 Ill. App. 3d at 222, 664 N.E.2d at 200. The hospital contends in this appeal that the imposter defense should have been applied only if the bank proved that the dishonest attorney or his confederate pretended to be the attorney's client in order to induce the hospital to issue the $200,000 settlement check. The hospital does not dispute that its *Blutcher* memorandum was subject to judicial notice in these proceedings. But it argues that instead of revealing an impersonation, the memo shows that a mere misrepresentation of the attorney's author-

ity to settle, coupled with a forgery of his client's signature on the covenant not to sue, induced the hospital to believe it could safely entrust the client's check with his legal counsel. The hospital concludes that because no actual assumption of identity occurred, the imposter defense does not apply, or at least it was unproven and should be resolved by a jury. The bank responds that it did prove the impostor defense. It contends the hospital's *Blutcher* memorandum includes a judicial admission that an imposture of the client induced the hospital to issue the check to his attorney, and, therefore, the trial judge's dismissal with prejudice should be affirmed, even under section 2—619 standards.

Thus, the questions are what type of conduct constitutes an imposture and whether the bank proved an imposture induced the hospital to issue the $200,000 check at issue.

The current, revised version of UCC Article 3, which is the article pertaining to negotiable instruments (810 ILCS 5/3—101 *et seq.* (West 2000)), does not include a definition of the term "imposter," and the prior, or original, version of Article 3 included only a brief official comment, indicating, " 'Impostor' refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement." Ill. Ann. Stat., ch. 26, par. 3—405(1)(a), Uniform Commercial Code Comment 2 (Smith-Hurd 1963).

■ Because the old official comment made it clear that the imposter defense "does not extend to a false representation that the party is the authorized agent of the payee," courts have consistently indicated that misrepresentation of a person's authority as an agent is not enough to trigger the impostor defense. See, *e.g.*, *East Gadsden Bank v. First City National Bank of Gadsden*, 50 Ala. App. 576, 580, 281 So. 2d 431, 434 (1973); *Intelogic Trace Texcom Group, Inc. v. Merchants National Bank*, 626 N.E.2d 839, 844-45 (Ind. App. 1993). When a person honestly identifies himself or herself, but falsely purports to be an agent of another, the person is simply misrepresenting his or her status, rather than misrepresenting his or her identity. *Intelogic*, 626 N.E.2d at 845. An impersonation, or misrepresentation of identity, is always required before the imposter rule can be invoked, whether the imposter pretends to be the principal or his agent. *East Gadsden*, 50 Ala. App. at 580, 281 So. 2d at 433; *Title Insurance Co. of Minnesota v. Comerica Bank—California*, 27 Cal. App. 4th 800, 806, 32 Cal. Rptr. 2d 735, 739 (1994). This principle is illustrated by *Title Insurance Co.*, in which a bank customer's son obtained home equity loans in her name by falsely representing that he was authorized to act on her

behalf. *Title Insurance Co.*, 27 Cal. App. 4th 800, 32 Cal. Rptr. 2d 735. The son arranged for checks to be issued totaling about $167,000, without assuming his mother's identity or forging her signature on the loan documents. *Title Insurance Co.*, 27 Cal. App. 4th 800, 32 Cal. Rptr. 2d 735. He always correctly identified himself as her son. *Title Insurance Co.*, 27 Cal App. 4th at 806, 32 Cal. Rptr. 2d at 739. Although his conduct was fraudulent, it was not an impersonation of his mother, and thus was not enough to invoke the imposter defense. *Title Insurance Co.*, 27 Cal App. 4th at 805-06, 32 Cal. Rptr. 2d at 738-39. Similarly, here, we find the mere fact that the dishonest attorney orally misrepresented his authority to settle his client's pending medical malpractice suit against the hospital was not enough to trigger the imposter defense. The question is whether the attorney's additional conduct of using the forged covenant not to sue amounted to an assumption of his client's identity.

Courts have disagreed over whether an impersonation occurs when, as in this case, a forged document is tendered in order to obtain a negotiable instrument. See *Intelogic Trace Texcom Group, Inc. v. Merchants National Bank*, 626 N.E.2d 839 (Ind. App. 1993) (analyzing split in authority). See also S. Dow, *The Impostor Rule and the Nature of Forgery Under the Revised Uniform Commercial Code: A Doctrinal Analysis and Some Suggestions for the Drafting Committee*, 49 Am. Bus. L.J. 25 (2001). The disagreement has resulted in two lines of authority.

There is only one post-UCC Illinois case addressing the imposter defense, *First National Bank of Chicago*, 303 Ill. App. 3d 176, 707 N.E.2d 673, but the topic was apparently only a minor issue, and thus provoked little discussion by the court. Because of this, and the need for uniformity in the interpretation of the UCC (see 1 Hawkland Uniform Commercial Code Series, § 1—102 (2002)), we consider it appropriate to consider the non-Illinois authority cited by the defendant bank and plaintiff hospital.

The bank relies upon the minority line of cases, which has applied the imposter defense when a forged document has been used to obtain a negotiable instrument. The leading opinion is *Minster State Bank v. BayBank Middlesex*, 414 Mass. 831, 611 N.E.2d 200 (1993), in which the court construed a promissory note bearing a husband's signature and his wife's forged signature as the husband's "implicit[ ]" impersonation of his spouse. *Minster*, 414 Mass. at 834-35, 611 N.E.2d at 202. The court was of the opinion that although the husband had not impersonated his wife "in the literal 'in person' " sense, he had held himself out as her, in writing, inducing the bank to issue a loan check. *Minster*, 414 Mass. at 834-35, 611 N.E.2d at 202. Other cases

consistent with *Minster* include *Fair Park National Bank v. Southwestern Investment Co.*, 541 S.W.2d 266 (Tex. Civ. App. 1976), in which a bank released a loan check for the purchase of construction equipment upon presentation of a forged bill of sale, and *Intelogic*, 626 N.E.2d 839, in which the court determined that the imposter defense might apply if a lease-back agreement and other documents bearing a forged signature induced the issuance of three checks, but that questions of fact precluded summary judgment in that particular instance.

We are not persuaded by *Minster*'s reasoning. We regard an imposter as "[o]ne who pretends to be someone else to deceive others" (Black's Law Dictionary 760 (7th ed. 1999)), or "a person who practices deception under an assumed character, identity or name" (Random House Webster's Unabridged Dictionary 962 (1998)), rather than someone who correctly identifies himself or herself but suggests through forged documents or signatures that another person is involved in the financial or business transaction. A dissenting justice in *Minster* considered it crucial that the husband had never represented that he was anyone other than himself (*Minster*, 414 Mass. at 836, 611 N.E.2d at 203 (O'Connor, J., dissenting)). The dissent pointed out that if the husband had forged the wife's signature and returned the promissory note to the bank without a cover letter or with a cover letter purportedly from her, then clearly an imposture "by use of the mails or otherwise" (810 ILCS 5/3—404(a) (West 2000)) as stated in the UCC would have occurred. *Minster*, 414 Mass. at 836, 611 N.E.2d at 203 (O'Connor, J., dissenting). Impersonation would have occurred in those circumstances because the mailing would have falsely represented that the wife, not the husband, was the correspondent. *Minster*, 414 Mass. at 836, 611 N.E.2d at 203 (O'Connor, J., dissenting). However, the facts showed that the husband had only lied about his wife's participation in the loan transaction and never expressly or implicitly told anyone that he was her. *Minster*, 414 Mass. at 837, 611 N.E.2d at 203 (O'Connor, J., dissenting). The dissent believed the court had too lightly dismissed the "sound logic" of the other developing line of authority, which would have construed the husband's conduct as a misrepresentation coupled with a forged document. *Minster*, 414 Mass at 837, 611 N.E.2d at 203 (O'Connor, J., dissenting).

Prominent cases in that line include *East Gadsden Bank v. First City National Bank of Gadsden*, 50 Ala. App. 576, 281 So. 2d 431 (1973), and *Broward Bank v. Commercial Bank of Hollywood*, 547 So. 2d 687 (Fla. App. 1989). *Minster*, 414 Mass. at 837, 611 N.E.2d at 203 (O'Connor, J., dissenting). The hospital urges us to consider their reasoning. Like *Minster*, both of these cases involved a misrepresentation of intent and forged signatures on the documents required to

obtain checks, yet the imposter defense was rejected. In *East Gadsden,* a loan applicant caused his bank to issue a check by misrepresenting that he was purchasing a car and forging the signature of a car dealership's officer on a purchase order in order to substantiate his intent to purchase the vehicle. *East Gadsden,* 50 Ala. App. at 579, 281 So. 2d at 432. In a breach of warranty suit involving the bank that issued the check and the bank that accepted it, the court concluded that the loan applicant had merely misrepresented to the issuing bank that he was purchasing an automobile and strengthened his misrepresentation with the forged purchase order. *East Gadsden,* 50 Ala. App. at 580, 281 So. 2d at 434. The imposture required for imposition of the imposter rule had never occurred. *East Gadsden,* 50 Ala. App. at 582, 281 So. 2d at 436. In the more recent *Broward Bank* case, the plaintiff bank argued that if forgery were enough to trigger the imposter rule, the rule would be known as the forgery rule. *Broward Bank,* 547 So. 2d at 688. The court rejected the imposter defense after a husband forged his wife's signature on loan documents and the resulting loan checks (*Broward Bank,* 547 So. 2d at 688), emphasizing that no one at the issuing bank had contact with a person identifying herself as the wife. *Broward Bank,* 547 So. 2d at 689. It also indicated that if the imposter rule were construed to the contrary, then "virtually every forgery would also constitute an 'impersonation.' " *Broward Bank,* 547 So. 2d at 689. The *East Gadsden/Broward Bank* line includes a case we consider the most factually similar to the present dispute, *Clients' Security Fund v. Allstate Insurance Co.,* 219 N.J. Super. 325, 530 A.2d 357 (1987). In that New Jersey case, an attorney tendered forged client releases in order to obtain settlement checks. *Clients' Security,* 219 N.J. Super. at 328, 530 A.2d at 358. The checks were made payable to the attorney and his clients, but the attorney forged the clients' endorsements, deposited the funds into his own account at another bank, and then kept the proceeds. *Clients' Security,* 219 N.J. Super. at 328, 530 A.2d at 358. The New Jersey court was satisfied that under these facts, the imposter defense was not applicable. It emphasized that the attorney never pretended to be anyone other than himself. *Clients' Security,* 219 N.J. Super. at 333, 530 A.2d at 360. He always represented the true fact that he was the claimants' attorney and never claimed to be the clients themselves. *Clients' Security,* 219 N.J. Super. at 333, 530 A.2d at 360. In the court's opinion, rather than impersonating someone, the attorney misrepresented that his clients intended to settle, and then strengthened his misrepresentation with a forged document. *Clients' Security,* 219 N.J. Super. at 333, 530 A.2d at 361. The court also indicated that if it deemed the attorney to be an impersonator, it would effectively negate the UCC's

general rule that a forged endorsement is ineffective to pass title. *Clients' Security*, 219 N.J. Super. at 333, 530 A.2d at 361. "Virtually every forger would be an 'impersonator.' Every forged instrument would thus be rendered effective, thereby immunizing the depositary bank from liability." *Clients' Security*, 219 N.J. Super. at 333, 530 A.2d at 361.[1] Accord *Bank of Glen Burnie v. Elkridge Bank*, 120 Md. App. 402, 707 A.2d 438 (1998); *People v. Traverse City State Bank*, 9 Mich. App. 639, 158 N.W.2d 65 (1968). See also *Title Insurance Co. of Minnesota v. Comerica Bank-California*, 27 Cal. App. 4th 800, 32 Cal. Rptr. 2d 735 (1994). We are persuaded that this line of cases is the proper interpretation of the UCC imposter defense. We point out, however, that although we consider *Clients' Security* to be the most analogous, none of the previous cases appears to have involved a forged signature that was notarized.

■ We now consider the bank's basis for seeking dismissal of the hospital's pleading. The bank relied on three documents. First, the memorandum the hospital filed in the *Blutcher* proceedings in opposition to the client's petition to vacate the order dismissing the hospital as a defendant to the client's medical malpractice action. The hospital stated in its memo: (a) after extensive motion practice, discovery, and "arm's-length" settlement negotiations, the patient's attorney represented that his client had agreed to settle the claim against the hospital for $200,000, (b) "Accordingly, counsel for [the hospital] prepared a Covenant not to Sue and tendered it to [the attorney] for his client's signature," (c) the attorney returned the covenant not to sue bearing the notarized signature of his client, (d) the notary attested that the client had appeared before her in person on December 8, 1998, and had freely and voluntarily signed the covenant, and (e) "Upon receipt of the signed and notarized Covenant, counsel for [the hospital] tendered a settlement draft to [the patient's attorney] made payable to [the client and his attorney's law firm]." The bank also cited the opinion filed in the *Blutcher* proceedings (321 Ill. App. 3d at 133, 746 N.E.2d at 865) for the proposition that the attorney and the hospital negotiated the settlement over the phone on a " 'rush basis.' " Finally, the bank relied on the hospital's second amended complaint alleging the check was not properly payable under section 4—401 of the UCC due to the forged endorsement, for the proposition that the hospital had admitted delivering the settlement check to the attorney made payable to the client and the attorney.

---

[1]Although the hospital places considerable emphasis on *King v. White*, 265 Kan. 627, 962 P.2d 475 (1998), a recent case that relied heavily on *Clients' Security*, *King* is distinguishable because the attorney involved only orally misrepresented his authority to settle a pending case.

These documents, however, do not establish the imposter defense was applicable. They do not prove that anyone assumed the client's identity, nor do they prove that the assumption of identity is what induced the hospital to issue the settlement check. The statements clearly indicate that the attorney misrepresented his authority to settle, yet misrepresentation of authority is not an imposture and has never been enough to trigger the defense. The statements also clearly establish that the client's signature was notarized, yet they do not indicate that an actual assumption of the client's identity was necessary to gain the notary's endorsement. These statements leave open several possible ways of obtaining the notarization, and not all of them involve an imposture. As examples, it could be inferred from the facts presented that the dishonest attorney forged both the client's signature and the notary's endorsement, that the notary knowingly endorsed the client's signature despite his absence, or that the dishonest attorney or his confederate appeared before the notary as the client in order to gain the notary's participation. All of these possibilities exist under the limited facts presented; however, only the last one qualifies as an imposture. We are not finding that the latter scenario is the only way in which the imposture defense could be established in this case. We do not know what actually occurred and what discovery might reveal about the circumstances leading up to the issuance of the settlement check. We use these examples to demonstrate that a question of fact exists as to whether an imposture, or assumption of identity, consistent with *East Gadsden* and *Broward Bank* occurred, and that the moving party failed to meet its burden of proving imposture as a matter of law. We also point out that the documents clearly disclose that the attorney tendered the covenant not to sue bearing the client's forged signature and that the hospital tendered its check, but they do not establish that the notarized document in particular is what induced the hospital to issue the check. Even assuming that an actual imposture was required to gain the notary's endorsement, a question of fact remains as to whether that imposture induced issuance of the check. Construing the documents in the light most favorable to the nonmoving party leads to the conclusion that the bank failed to prove as a matter of law that an imposture had occurred and that the imposture is what induced issuance of the check.

■ As a final note, the bank also asserted in its written memorandum to the trial judge that UCC section 3—405 (810 ILCS 5/3—405 (West 2000)), the section pertaining to an employer's responsibility for fraudulent endorsement by an employee, justified dismissal of the hospital's action. The bank has argued this theory as an alternate basis for affirming the dismissal of the hospital's claim. The bank is

relying on the principle that a dismissal order which does not specify the grounds on which it is based places before the appellate court every issue raised in the motion to dismiss, and if any ground raised by the motion was proper, the appellate court must affirm. *Williams v. Board of Education of the City of Chicago*, 222 Ill. App. 3d 559, 565, 584 N.E.2d 257, 262 (1991). Nevertheless, when an appellate record indicates that an issue argued on appeal was not decided by the trial court, the issue is not properly preserved and is deemed to be waived on appeal. *Williams*, 222 Ill. App. 3d at 565, 584 N.E.2d at 262. In this instance, there is no indication in the report of proceedings that this alternate defense theory entered into the trial judge's ruling, and so we do not consider it an appropriate basis for reviewing the ruling. Furthermore, the bank has failed to cite any authority applying section 3—405 to an attorney-client relationship or even construing an attorney-client relationship as one of employee-employer. The bank's failure to cite supporting authority is an additional reason we will not consider the merits of this theory. *Pauley v. Werries*, 122 Ill. App. 3d 263, 265, 461 N.E.2d 54, 56 (1984).

At this point in time, material questions of fact remain as to what transpired before the $200,000 settlement check was issued. It cannot be said that there is no set of facts which would entitle the hospital to recover against the bank. Accordingly, the bank was not entitled to judgment as a matter of law and the dismissal of the bank's complaint was erroneous. The judgment of the circuit court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GORDON and McNULTY, JJ., concur.