DENNIS HAGEMANN, Appellant and Cross-Appellee, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (William Sherman III, d/b/a Sherman Grain Farms, Appellee and Cross-Appellant).

Third District   No. 3—08—0989WC

Opinion filed January 22, 2010.—Modified on denial of rehearing April 30, 2010.

Nigel S. Smith, of Law Offices of Peter F. Ferracuti, of Ottawa, for appellant.

Andrewe W. Johnson, of Collins & Johnson, P.C., of Lewistown, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Dennis Hagemann filed an application for adjustment of claim against William Sherman III, doing business as Sherman Grain Farms, seeking workers' compensation benefits for injuries he sustained on May 12, 2003, while driving a semi-tractor trailer to haul grain. Sherman moved to dismiss the application, arguing that his business fell under the agricultural enterprise exemption of the Workers' Compensation Act (Act) (820 ILCS 305/3(19) (West 2008)). The arbitrator granted the motion to dismiss, and Hagemann appealed to the Illinois Workers' Compensation Commission (Commission), which affirmed the arbitrator's dismissal.

Hagemann then filed an appeal in the Knox County circuit court, and Sherman moved to dismiss the appeal, or in the alternative to transfer venue to La Salle County. Regarding the motion to dismiss, Sherman argued that Hagemann failed (1) to comply with provisions of the Act necessary for perfecting an appeal in the circuit court, and (2) to exercise due diligence to obtain service of process per Supreme Court Rule 103(b) (177 Ill. 2d R. 103(b)). The matter proceeded to a hearing where Sherman withdrew his request for a transfer of venue and the circuit court denied his motion to dismiss. The court did, however, make the requisite finding for permissive interlocutory ap-

peal under Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)). We denied Sherman's ensuing application for leave to appeal.

After further proceedings below, the circuit court confirmed the Commission's decision that Sherman's business fell under the agricultural enterprise exemption, warranting dismissal of Hagemann's claim for workers' compensation benefits. Hagemann then filed the instant appeal challenging the Commission's decision, and Sherman cross-appealed the denial of his motion to dismiss the circuit court appeal.

## BACKGROUND

Sherman filed his motion to dismiss the workers' compensation claim pursuant to subsection 2—619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(1) (West 2008)), which allows involuntary dismissal for lack of subject matter jurisdiction. The evidence on this issue is confined to two affidavits—one from Sherman in support of his motion to dismiss, and the other from Hagemann in opposition to the motion.

Sherman's affidavit reads:

"1. I, WILLIAM SHERMAN III, am the sole proprietor of a business known as SHERMAN GRAIN FARMS, 271 N. 20th Road, Tonica, IL 61370.

2. SHERMAN GRAIN FARMS now employs three full-time employees—myself; my wife, Beth Sherman; and James Taliani, who was hired in April of 2004. In the fall of 2003, I had another seasonal employee named Gene Birkenbuel. For the 12 months preceding May 12, 2003, SHERMAN GRAIN FARM had only Beth Sherman and I as full-time employees.

3. SHERMAN GRAIN FARMS is an agricultural enterprise, to wit, a family farm raising grain crops in Tonica, Illinois. As an extension of such agricultural enterprise, SHERMAN GRAIN FARMS hauls grain to and from mills and trucks feed for livestock for other farmers, in addition to trucking grain produced by SHERMAN GRAIN FARMS. The grain hauling portion of our agricultural enterprise constitutes less tha[n] $33^{1}/_{3}$% of our business. During the twelve months preceding May 12, 2003, the grain hauling portion of our agricultural enterprise constituted approximately 20% to 25% of our business.

4. On a seasonal basis, SHERMAN GRAIN FARMS uses the services of individuals holding commercial drivers licenses to drive trucks to haul grain. SHERMAN GRAIN FARMS considers such individuals to be independent contractors who work on a compensation schedule based not on the number of days or hours worked, but rather on a percentage of the trucking value of the loads hauled

by the driver on a schedule set by the individual driver. Usually such percentage is 25% as was paid to Petitioner, DENNIS HAGEMANN, in cash without the withholding for any taxes, FICA, or Medicare. DENNIS HAGEMANN, Steve Hagemann, Robert Birkenbuel, and Ken Ladson were the only such individuals who drove trucks in this manner during the 12 months preceding May 12, 2003.

5. Even if all four independent contractors whose services were retained to drive grain trucks for SHERMAN GRAIN FARMS during the 12 months preceding May 12, 2003, were considered to be employees instead of independent contractors, and even if each of those four worked every day of each quarter (which they did not), SHERMAN GRAIN FARMS would still have employed less than 400 working days of agricultural labor per quarter during the 12 months preceding May 12, 2003, exclusive of the working hours of my wife, Beth Sherman.

6. I did not carry worker's compensation insurance or have in place a plan of self-insurance on May 12, 2003. At that time, I did not believe that I had any employees to whom the Worker's Compensation Act would apply and did not believe such insurance coverage to be necessary to my agricultural business operations. At no time prior to May 13, 2003, did I elect under Section 1 of the Worker's Compensation Act to have such Act apply to my agricultural operations. Although I now have worker's compensation insurance which applies to my employee, James Taliani, I did not acquire such insurance until hiring Gene Birkenbuel in the fall of 2003.

7. If called as a witness, I would testify to the above."

Hagemann's affidavit reads:

"1. I, DENNIS HAGEMANN, was an employee of a business known as SHERMAN GRAIN FARMS on May 12, 2003.

2. I was hired by SHERMAN GRAIN FARMS, upon obtaining my commercial driver's license, to transport grain from one grain mill in central Illinois to another.

3. My transportation of the grain as an employee of SHERMAN GRAIN FARMS had no relation to the Sherman family farm, as I did not transport grain to the family farm or from the family farm.

4. I did not perform any of my job duties on the Sherman family farm and I did not assist in or engage in any farm work.

5. My employment consisted of driving a truck owned by SHERMAN GRAIN FARMS to transport grain, usually from FASCO grain mill in Mendota to other grain mills in the area or vice versa. I did not travel to SHERMAN GRAIN FARMS to pick up the truck each day. Rather, the truck was kept at FASCO grain mill in Mendota, Illinois.

6. The grain I transported was produced by many farmers, not solely SHERMAN GRAIN FARMS. Much of the grain that I transported was not grain produced by SHERMAN GRAIN FARMS.

7. While employed by SHERMAN GRAIN FARMS, I had no knowledge that Mr. Sherman had elected not to provide workers' compensation coverage for his trucking employees.

8. If called as a witness, I would testify to the above."

The Commission issued its decision affirming the arbitrator's dismissal on October 23, 2007, and Hagemann's counsel received his copy of the decision on November 1, 2007. Hagemann's counsel appealed the Commission's decision by mailing a written request for summons to the Knox County circuit court on November 9, 2007. In the request, counsel asked the circuit court "to issue summons to the *** Commission to certify to this [Circuit] Court on November 9, 2007 the transcript of proceedings ***, and to issue summons to the other parties and attorneys at the below addresses." The request gave the names and mailing addresses for three recipients of summons: the Commission, Sherman, and Sherman's counsel. Along with the request for summons, Hagemann's counsel mailed other documents for the appeal including a form titled "CERTIFICATE OF MAILING—WORKERS' COMPENSATION REVIEW" and actual summonses to the Commission, Sherman, and Sherman's counsel. The certificate was to be signed and dated by the circuit clerk upon mailing of summonses to Sherman and Sherman's counsel. The actual summonses contained a line for designation of the return date, and the line was left blank on each.

Hagemann's request for summons was file stamped in the circuit court on November 16, 2007. A docket entry shows that a telephone call was made from the court to Hagemann's counsel "around 11-16-07 regarding summons not being complete." On November 26, 2007, Sherman's counsel contacted the La Salle County circuit clerk to see if an appeal had been filed there.[1] Upon receiving a negative answer, he called Hagemann's counsel, who advised that the appeal was filed in Knox County and offered to furnish copies of the appeal documents via facsimile. On or about November 28, 2007, Hagemann's counsel called the Knox County circuit clerk's office and provided a return date of January 10, 2008, to be added to the summonses. He stated by affidavit that he spoke with a court employee who said "she would send to [him] the original summons for personal service on Defendant, as the Knox County Sheriff does not personally serve par-

---

[1]Sherman's home county was La Salle, although the case was arbitrated in Knox.

ties outside Knox County." On November 30, 2007, Sherman's counsel received a facsimile transmission from Hagemann's counsel providing the appeal documents.

On February 13, 2008, Sherman's counsel made a telephone call to the Knox County circuit clerk's office to inquire about the status of the case. During the call, counsel advised that he would be filing a motion to dismiss the appeal for failure to have summons issued and served. An employee from the clerk's office then called Hagemann's counsel on February 14, 2008, advising that no summonses had been issued and requesting a new return date. The summonses were issued that day (February 14, 2008) with a return date of March 21, 2008.

## DISCUSSION

### 1. Motion to Dismiss Circuit Court Appeal

■ Sherman claims that his motion to dismiss the circuit court appeal should have been granted because Hagemann failed to "have summons issued within 20 days after" receiving the Commission's decision. Sherman's basis for this asserted 20-day requirement is subsection 19(f)(1) of the Act, which reads:

"A proceeding for review shall be commenced within 20 days of the receipt of notice of the decision of the Commission. The summons shall be issued by the clerk of such court upon written request returnable on a designated return day, not less than 10 or more than 60 days from the date of issuance thereof, and the written request shall contain the last known address of other parties in interest and their attorneys of record who are to be served by summons. *** The clerk of the court issuing the summons shall on the day of issue mail notice of the commencement of the proceedings which shall be done by mailing a copy of the summons to the office of the Commission, and a copy of the summons to the other parties in interest or their attorney or attorneys of record and the clerk of the court shall make certificate that he has so sent said notices in pursuance of this Section, which shall be evidence of service on the Commission and other parties in interest.
***

In its decision on review the Commission shall determine in each particular case the amount of the probable cost of the record to be filed as a part of the summons in that case and no request for a summons may be filed and no summons shall issue unless the party seeking to review the decision of the Commission shall exhibit to the clerk of the Circuit Court proof of payment by filing a receipt showing payment or an affidavit of the attorney setting forth that payment has been made of the sums so determined to the Secretary or Assistant Secretary of the Commission, except as otherwise

provided by Section 20 of this Act." 820 ILCS 305/19(f)(1) (West 2008).

Subsection 19(f)(2) adds: "No such summons shall issue unless the one against whom the Commission shall have rendered an award for the payment of money shall upon the filing of his written request for such summons file with the clerk of the court a bond conditioned that if he shall not successfully prosecute the review, he will pay the award and the costs of the proceedings in the courts." 820 ILCS 305/19(f)(2) (West 2008).

In *Forest Preserve District v. Industrial Comm'n*, 305 Ill. App. 3d 657 (1999), the claimant argued that no appeal had been perfected in the circuit court because he was not served with summons within 20 days of receiving the Commission's decision. We rejected this argument, finding no such time requirement for service in the Act. The same conclusion applies here. Sherman accurately observes that Hagemann did not "have summons issued within 20 days after" receiving the Commission's decision. However, there is no requirement in the Act that summons be issued within the 20-day period. As the above-quoted language shows, the Act requires that certain documents be filed to initiate a proceeding for review within 20 days of receiving the Commission's decision. Hagemann filed those documents. Although the summonses lacked a return date, this omission did not defeat the circuit court's jurisdiction. See, *e.g.*, *Chambers v. Industrial Comm'n*, 213 Ill. App. 3d 1 (1991) (failure to designate return date did not defeat circuit court's jurisdiction); *Advance Transportation Co. v. Industrial Comm'n*, 202 Ill. App. 3d 449 (1990) (same).

We realize that in *Chambers* and *Advance Transportation* the summonses were issued despite lacking a return date. In the instant case, however, the circuit court ultimately issued summonses as well. The delay in issuance pertains not to subsection 19(f) of the Act but to the due diligence requirement of Supreme Court Rule 103(b). Accordingly, we proceed to Sherman's argument under that rule.

■ The rule states:

"If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant only and shall not bar any claim against any other party based on vicarious liability for that dismissed defendant's conduct. The dismissal may be made on the application of any party or on the court's own motion. In consider-

ing the exercise of reasonable diligence, the court shall review the totality of the circumstances, including both lack of reasonable diligence in any previous case voluntarily dismissed or dismissed for want of prosecution, and the exercise of reasonable diligence in obtaining service in any case refiled under section 13—217 of the Code of Civil Procedure." Official Reports Advance Sheet No. 14 (July 4, 2007), R. 103(b), eff. July 4, 2007.

Courts have cited a general list of factors to consider when ruling on a motion to dismiss under this provision. The list includes: the length of time used to obtain service of process; the activities of the plaintiff; the plaintiff's knowledge of the defendant's location; the ease with which the defendant's whereabouts could have been ascertained; the defendant's actual knowledge of pendency of the action as a result of ineffective service; special circumstances that would affect the plaintiff's efforts; and actual service on the defendant. *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207 (2007); *McCormack v. Leons*, 261 Ill. App. 3d 293 (1994). Lack of prejudice to the defendant is a factor but not dispositive. See *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371 (1990). "There is no specific time limitation provided by Rule 103(b). Rather, a court must consider the passage of time in relation to all the other facts and circumstances of each case individually." *Case*, 227 Ill. 2d at 213. The primary purpose of the rule is to prevent " 'intentional delay in the service of summons which would postpone service for an indefinite time after a statutory period of limitations has run.' " *Segal v. Sacco*, 136 Ill. 2d 282, 286 (1990), quoting *Karpiel v. LaSalle National Bank of Chicago*, 119 Ill. App. 2d 157, 160 (1970).

When an issue involves construction of the language of Rule 103(b), our review is *de novo*. *Case*, 227 Ill. 2d at 213. On the merits of a motion to dismiss under the rule, the disposition is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Parker v. Piskur*, 258 Ill. App. 3d 344 (1994). "Discretion is abused only if no reasonable person could take the view adopted by the trial court." *In re Marriage of Kaplan*, 149 Ill. App. 3d 23, 31 (1986).

In the instant case, Sherman seeks *de novo* review by asserting a question of construction regarding the following language from Rule 103(b): "If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice ***." Ill. S. Ct. R. 103(b) (eff. July 4, 2007). To whatever extent this language needs construction, we conclude that it is plain and unambiguous. An action "shall" be dismissed "with prejudice" if the plaintiff fails "to exercise

reasonable diligence to obtain service on a defendant" after the statute of limitations expires. One cannot make this determination, however, without first addressing the question of reasonable diligence, and we review the circuit court's finding on reasonable diligence for an abuse of discretion.

■ The record shows that Hagemann timely filed a request for summons listing both Sherman and Sherman's counsel with their current mailing addresses. Although the accompanying summonses did not contain a return date, the circuit clerk certainly could have mailed them without one—as did the clerks in *Chambers* and *Advance Transportation*. When the clerk's office called Hagemann's counsel for a return date, counsel called back and provided the date of January 10, 2008. He also provided copies of the appeal documents to Sherman's counsel via facsimile on November 30, 2007. Accordingly, Sherman had notice of the appeal by ineffective service (the appeal documents included subpoena forms) within a month of its filing. These facts indicate a lack of prejudice. The circuit clerk still did not issue the summonses—on the grounds that the Knox County sheriff would not serve process on individuals outside the county. This approach by the clerk was improper because the Act clearly provides for service by mailing and clearly states, "The summons *shall be issued by the clerk of such court* upon written request returnable on a designated return day \*\*\*." (Emphasis added.) 820 ILCS 305/19(f)(1) (West 2008). When the clerk's office called Hagemann's counsel for another return date, counsel provided a date of March 21, 2008, and the summonses were promptly issued.

Sherman argues that Hagemann cannot be excused for the circuit clerk's failure to issue summons, citing *Penrod v. Sears, Roebuck & Co.*, 150 Ill. App. 3d 125, 129 (1986) ("It was the plaintiff's duty here to assure that summons was issued by the clerk \*\*\*"). The language of *Penrod* grew from the particular facts of that case and does not establish a hard-and-fast rule governing all subsequent cases. Indeed the supreme court has explained that decisions under Rule 103(b) should be based on the "facts and circumstances of each case individually." *Case*, 227 Ill. 2d at 213. *Cf. Verploegh v. Gagliano*, 396 Ill. App. 3d 1041 (2009) (distinguishing *Penrod*). The plaintiff in *Penrod* waited four months after filing his complaint before contacting the circuit clerk to determine whether summons had been issued. Then he waited another three months before contacting the clerk again and preparing a new summons. In the instant case, the entire delay was shorter than the first part of the delay in *Penrod*. Moreover, the totality of the circumstances, as discussed above, supports the judge's decision that Hagemann was reasonably diligent. Although service of summons was

delayed, it cannot be reasonably said that Hagemann engaged in intentional delay for the purpose of indefinitely postponing service. We find no reversible error.

## 2. Motion to Dismiss Workers' Compensation Claim

As noted above, Sherman filed his motion to dismiss Hagemann's workers' compensation claim pursuant to subsection 2—619(a)(1) of the Code of Civil Procedure, which reads:

> "Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. ***
>
> (1) That the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction." 735 ILCS 5/2—619(a)(1) (West 2008).

Sherman argued that the Commission lacked subject matter jurisdiction because his business fell under the agricultural exemption codified in subsection 3(19) of the Act. Hagemann, on the other hand, argued that Sherman used him to operate a trucking business, not an agricultural enterprise. Trucking is a form of carriage, an extrahazardous business subject to automatic application of the Act pursuant to subsection 3(3).

■ The relevant statutory language reads:

> "The provisions of this Act hereinafter following shall apply automatically and without election *** to all employers and all their employees, engaged in any department of the following enterprises or businesses which are declared to be extra hazardous, namely:
>
> * * *
>
> 3. Carriage by land, water or aerial service and loading or unloading in connection therewith, including the distribution of any commodity by horsedrawn or motor vehicle where the employer employs more than 2 employees in the enterprise or business.
>
> * * *
>
> 19. Nothing contained in this Act shall be construed to apply to any agricultural enterprise, including aquaculture, employing less than 400 working days of agricultural or aquacultural labor per quarter during the preceding calendar year, exclusive of working hours of the employer's spouse and other members of his or her immediate family residing with him or her." 820 ILCS 305/3(3), (19) (West 2008).

The arbitrator granted Sherman's motion to dismiss on the grounds that Sherman was operating an agricultural enterprise, not a carriage

business. The Commission affirmed and adopted the arbitrator's decision, and the circuit court confirmed the Commission's decision.

A section 2—619 motion is similar to a motion for summary judgment and allows for the dismissal of a complaint based on issues of law or easily proven issues of fact. *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755 (2004). Disputed questions of fact, however, are reserved for trial proceedings if necessary. *Advocate Health & Hospitals*, 348 Ill. App. 3d 755. The movant admits all well-pleaded facts and reasonable inferences therefrom, and the motion should be denied if a genuine issue of material fact exists. *Streams Condominium No. 3 Ass'n v. Bosgraf*, 219 Ill. App. 3d 1010 (1991). In making this determination, the court must construe all pleadings and supporting matter in the light most favorable to the nonmoving party. See *Wolf v. Bueser*, 279 Ill. App. 3d 217 (1996). Our standard of review is *de novo*. *Advocate Health & Hospitals*, 348 Ill. App. 3d 755.

In his affidavit, Sherman stated that during the time in question, the grain hauling portion of his enterprise constituted approximately 20% to 25% of his business. Hagemann worked exclusively in that portion of the business, and according to his own affidavit, he only transported grain from mill to mill—never from the Sherman farm to a mill. Moreover, he did not visit the farm to begin work each day because Sherman simply kept the truck at FASCO grain mill in Mendota. As such, Hagemann's work involved transporting grain produced by farmers other than Sherman.

In respect to grain, an agricultural enterprise naturally consists of tillage, planting, harvesting and marketing. Harvesting includes not only cutting the grain but also transporting it (*i.e.*, carriage) to a location for storage and marketing. In some cases marketing may involve carriage as well. Thus, if Hagemann had been injured while hauling a load of Sherman's grain to on-farm storage or from the Sherman farm to an off-farm storage facility, his injury would have occurred as part of an agricultural enterprise. The same conclusion applies if his injury occurred while transporting Sherman's grain from off-farm storage to an ultimate end user or end buyer, because such marketing activity is fundamental to an agricultural enterprise.

■ Hagemann was clearly engaged in carriage at the time of his injury,[2] but certain carriage is still covered by the agricultural enterprise exemption. Accordingly, a genuine issue of material fact ex-

---

[2]Sherman takes issue with this observation, arguing that Hagemann may not have been engaged in " 'carriage by land' covered under the Act" because subsection 3(3) requires a threshold number of employees (more than two). We cannot tell from the affidavits, Sherman argues, that the threshold number

ists as to whose grain Hagemann was hauling at the time of his injury. The general fact that Sherman operated an agricultural enterprise does not answer the question; it is the specific nature of Hagemann's work that is relevant. See, *e.g.*, *Peterson v. Industrial Comm'n*, 315 Ill. 199, 202 (1924) ("It cannot be said that because a man is a farmer that that fact, alone, exempts him from the operation of the Workmen's Compensation act where he engages on his farm in an independent extrahazardous occupation which is within the terms of the act"). If Hagemann's grain hauling at the time of his injury was merely extraneous to Sherman's agricultural enterprise, the exemption does not apply. If his grain hauling was fundamental to the agricultural enterprise, however, the exemption does apply because Sherman's affidavit indicates that the other requisites of the exemption are met.

This standard provides a framework for applying the agricultural enterprise exemption in future cases, each of which, ultimately, will require a decision based on its own unique circumstances. The case of *Hill v. Industrial Comm'n*, 346 Ill. 392 (1931) (agricultural exemption applied where employee of one farmer was injured while hulling clover of a different farmer), is not helpful because that decision rested squarely on statutory language that has since been removed from the Act. At the time of *Hill*, the agricultural exemption explicitly covered any work performed on any farm regardless of the particular kind of work being performed. In the instant case, the operative statutory language is not so clear. As noted above, we have herein provided a framework for applying the phrase "agricultural enterprise"—the operative statutory language today. 820 ILCS 305/3(19) (West 2008).

Dismissal of Hagemann's workers' compensation claim was improper. The specific circumstances of his case present a genuine issue of material fact that should be adjudicated through the regular arbitration process.

## CONCLUSION

For the foregoing reasons, we (1) affirm the circuit court's denial of Sherman's motion to dismiss the circuit court appeal, and (2) reverse the circuit court's decision confirming the Commission's dismissal of Hagemann's application for adjustment of claim. The

---

was met. Even accepting this argument as true, Sherman stated that he hired four truck drivers, and the affidavits must be construed in the light most favorable to Hagemann, not Sherman, at this stage of the proceedings. Rather than demonstrating that Hagemann is not entitled to relief, therefore, Sherman's argument on this point further demonstrates the existence of a genuine issue of material fact: whether Sherman, at the time in question, employed more than two employees in a carriage enterprise or business.

cause is remanded to the Commission for further proceedings on the application.

Affirmed in part and reversed in part; cause remanded for further proceedings.

McCULLOUGH, P.J., and HOFFMAN, HUDSON, and DONOVAN, JJ., concur.