FIFTH DIVISION

September 3, 2004

No. 1-03-1493

EDDIE LEWIS, Special Administrator of the Estate of Arnatha Lewis, Deceased,

Plaintiff-Appellant,

v.

JOHN DILLON,  IMRE NOTH, ALEX LICKERMAN, RITA NANDA, MITALI BOPNA, JOLEAN SIMMONS (incorrectly named as Jacquolyn Simmons), EVELYN DIZON, (incorrectly named as Nurse E.G.), and UNIVERSITY OF CHICAGO HOSPITALS,

Defendants-Appellees

(M. Ibriham, Patricia Kurtz, William Harper, and Farr Curlin,

Defendants).

)))))))))))))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Susan F. Zwick,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Eddie Lewis brought this medical malpractice action against the 
University of Chicago Hospitals
 
and 11 medical personnel, including
 John Dillon, M.D., Imre Noth, M.D., Alex Lickerman, M.D., Rita Nanda, M.D., Mitali Bopna, M.D., Jolean Simmons, R.N., and Evelyn Dizon, R.N. 
(collectively referred to as defendants)
(footnote: 1) who treated his deceased wife.  The trial court dismissed plaintiff’s case under Supreme Court Rule 103(b) (177 Ill. 2d R. 103(b)) for failure to exercise reasonable diligence to obtain service of process.  The trial court determined that plaintiff’s delay in obtaining the health professional’s report required by section 2–622 of the Code of Civil Procedure (735 ILCS 5/2–622)(West 2000))
, commonly referred to as the 
Healing Arts Malpractice Act, did not excuse the intentional five-month delay in serving defendants.  Because the statute of limitations had run in the period of time after plaintiff filed the complaint and before plaintiff served the defendants, the trial court dismissed the case with prejudice.  We affirm.

BACKGROUND
(footnote: 2)
 Plaintiff's wife, Arnatha Lewis, was admitted to the University of Chicago Hospitals on December 6, 1991.  She was discharged that day and remained under care as an outpatient.  Arnatha was readmitted on December 16, 1991, and died on December 27, 1999.  Plaintiff filed suit on December 21, 2001, shortly before the two-year statute of limitations periods for both medical malpractice and wrongful death actions had run.  In lieu of filing the affidavit and accompanying health practitioner’s report (section 2–622 report, collectively) required by section 2–622,
(footnote: 3) plaintiff's counsel filed an affidavit declaring that he was unable to obtain the section 2–622 report before the expiration of the statute of limitations, as allowed by subsection (a)(2) of section 2–622. 735 ILCS 5/2–622(a)(2) (West 2000).  The provisions of section 2–622 permitted plaintiff 90 days from the filing of his affidavit to file the section 2–622 report. 735 ILCS 5/2–622(a)(2)(West 2000).
  On March 18, 2002, within the additional 90-day time period, plaintiff's counsel filed the section 2–622 report.  However, plaintiff did not issue summons on any defendant until May 16, 2002, five months after the filing of his complaint and after the statute of limitations had run.  The earliest service was effected May 31, 2002.

Following service, defendants filed motions to dismiss plaintiff's complaint based on  Supreme Court Rule 103(b) and plaintiff's failure to exercise reasonable diligence to obtain service between the time he filed his complaint on December 21, 2001, and the issuance of summons on May 16, 2002.  In response to defendants' motions, plaintiff admitted that he intentionally withheld summons for all defendants until he obtained the necessary section 2–622 report.  He contended that at the time his complaint was filed in December 2001, it was not "viable" because it was not accompanied by the section 2–622 report.  Plaintiff further asserted that he therefore had an objectively reasonable basis for the delay in service of process and was under no obligation to serve defendants.  The circuit court rejected plaintiff's argument and so do we.

SUPREME COURT RULE 103(B) 

Supreme Court Rule 103(b) provides as follows:

"Dismissal for Lack of Diligence. If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant, the action as to that defendant may be dismissed without prejudice, with the right to refile if the statute of limitation has not run. The dismissal may be made on the application of any defendant or on the court's own motion." 177 Ill. 2d R. 103(b)
.

STANDARD OF REVIEW

The Illinois Supreme Court has explained that a dismissal under Rule 103(b) is within the sound discretion of the trial court.  
Segal v. Sacco
, 136 Ill. 2d 282, 286, 555 N.E.2d 719, 720 (1990)
; 
Womick v. Jackson County Nursing Home
, 137 Ill. 2d 371, 381, 561 N.E.2d 25, 29 (1990).
  
Plaintiff urges this court
, however, to apply 
de novo 
review to the instant case because it involves solely the application of the law to undisputed facts. 
  He asserts
 that the applicability of the abuse of discretion standard in Rule 103(b) cases has not actually been analyzed.
  Nonetheless, it has been noted that the Illinois Supreme Court, 
in applying Rule 103(b) on numerous occasions, has made clear that the trial court's determination of a plaintiff's lack of diligence is "a fact-intensive inquiry suited to balancing, not bright lines." 
Hinkle v. Henderson
, 135 F.3d 521, 524 (7th Cir. 1998), citing 
Womick v. Jackson County Nursing Home
, 137 Ill. 2d 371, 561 N.E.2d 25 (1990)( and cases cited therein).  Here, the trial court reviewed and considered the affidavits of plaintiff's counsel 
and defendants.  The court also considered and weighed numerous factors in deciding whether plaintiff exercised reasonable diligence.  While it is true that the trial court here, in exercising its discretion, made certain legal conclusions, those conclusions were correct and we shall address them in the context in which they arise.  We decline plaintiff's invitation to apply a 
de novo
 standard of review to the instant case.
  We therefore review the trial court's ruling under an abuse of discretion standard
. 
Kole v. Brubaker
, 325 Ill. App. 3d 944, 949, 759 N.E.2d 129, 133 (2001).

ANALYSIS

In ruling on a motion to dismiss under Rule 103(b), courts look to several factors to determine whether a plaintiff has exercised reasonable diligence in obtaining service: (1) the length of time used in serving the defendant; (2) the plaintiff’s activities; (3) whether the plaintiff is aware of the defendant’s location; (4) whether the defendant’s location could be easily ascertained; (5) actual knowledge of the complaint on the part of the defendant; (6) special circumstances affecting plaintiff’s efforts; and (7) actual service on the defendant.  
Segal v. Sacco
, 136 Ill. 2d 282, 287, 555 N.E.2d 719, 720 
(1990)
.  Prejudice against defendant is also considered, but lack of prejudice will not necessarily defeat a defendant’s Rule 103(b) motion.  
Womick v. Jackson County Nursing Home
, 137 Ill. 2d 371, 377, 561 N.E.2d 25, 27 
(1990).

In the instant case, all of these factors weigh in favor of the defendants.  The undisputed facts, with respect to each factor, are as follows: (1) plaintiff failed to issue summons or effectuate service within a five-month period; (2) plaintiff intentionally made no attempt to serve any defendant; (3) and (4) in addition to a hospital, all of the defendants were physicians and nurses, the record demonstrates that all were easily located and this was not an issue because plaintiff intentionally chose not to serve anyone; (5) there is no evidence that any defendant had knowledge of the pendency of the lawsuit; (6) plaintiff made no "efforts" to serve defendants;
(footnote: 4) and (7) each of the defendants was served.
(footnote: 5) 

Plaintiff argues that because his counsel acted deliberately, it does not make any sense to apply the 
Segal
 factors mechanically.  
Plaintiff claims that he did not have a viable medical malpractice complaint until the filing of the section 2–622 report.  
He asserts that he purposely elected not to issue any summons against any defendant until he first consulted with a physician to determine whether there was medical support for the allegations in the filed complaint.  
 He has also asserted that his intentional delay in serving defendants was consistent with Rule 103(b)'s underlying purpose.

The Illinois Supreme Court adopted Rule 103(b) "'to effectuate its historical and constitutional mandate to render justice fairly and promptly.'" 
Womick
, 137 Ill. 2d at 377, 561 N.E.2d at 27, quoting 
O'Connell v. St. Francis Hospital
, 112 Ill. 2d 273, 282, 492 N.E.2d 1322, 1326 (1986).  The court long ago emphasized the purpose and importance of Rule 103(b) when it explained as follows: 

"Nothing is more critical to the judicial function than the administration of justice without delay. [Citations.] Central to discharging this function, the judiciary must be unimpeded in considering and rendering judgments on matters before it. [Citations.] Rule 103(b) was adopted by this court to effectuate its historical and constitutional mandate to render justice fairly and promptly.

Due diligence in serving process is essential to this purpose, for it is the sole legally sufficient means of alerting defendants to the pendency of a civil suit.  In addition, service with due diligence, by promptly placing defendant on notice of a pending action, shortens the time needed to investigate, prepare and litigate the issues raised, thereby allowing the court to proceed expeditiously to a just resolution of the matter before it." 
O'Connell v. St. Francis Hospital
, 112 Ill. 2d 273, 282, 492 N.E.2d 1322, 1326 (1986).

The purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process 
and
 to prevent the circumvention of the statute of limitations. See 
Segal v. Sacco
, 136 Ill. 2d 282, 286-87, 555 N.E.2d 719, 720 (1990) ("It has long been noted that '[p]revention of intentional delay in the service of summons which would postpone service for an indefinite time after a statutory period of limitations has run, was a primary reason for the passage of Supreme Court Rule 103(b) and its predecessors. [Citations.]"); see also
 
Wilk v. Wilmorite, Inc
., ___ Ill. App. 3d  ___, ___, 812 N.E.2d 765, 771 (2004)("Rule 103(b) further aims to protect defendants from unnecessary delay in the service of process so that they are afforded a fair opportunity to investigate. Thus, 
Rule 103(b) seeks to prevent circumventing a primary purpose of statutes of limitation by not allowing a plaintiff to timely file suit before the applicable limitation period expires and then intentionally take no action to serve the defendant until the plaintiff is ready to proceed with litigation."); 
Fassero v. Turigliatto
, 349 Ill. App. 3d 368,  811 N.E.2d 252 (2004)(one of the purposes of Rule 103(b) is to protect defendants from stale claims, thereby affording defendants a fair opportunity to investigate the circumstances while witnesses and facts are accessible); 
Kole v. Brubaker
, 325 Ill. App. 3d 944, 949, 759 N.E.2d 129, 133 (2001) (Rule 103(b) further aims to protect a defendant from unnecessary delay in the service of process and to prevent the plaintiff from circumventing the applicable statute of limitations, which is designed to afford the defendant a fair opportunity of investigation, by filing suit before the expiration of the limitations period but taking no action to have the defendants served until the plaintiff is ready to proceed with the litigation ); 
Curtis v. Pekin Insurance Co.
, 105 Ill. App. 3d 561, 565, 434 N.E.2d 555, 558 (1982) ("primary purpose of Supreme Court Rule 103(b) is to prevent the circumvention and undermining of the applicable statute of limitations by undue delays in the service of process); 
Kohlhaas v. Morse
,
 
36 Ill. App 2d 158, 162, 183 N.E.2d 17, 19 (1962)
(explaining that the Illinois Supreme Court adopted Rule 4, the predecessor to Rule 103(b), to prevent a plaintiff from filing a complaint near the end of the statutory time limit, and then delaying service of summons for an indefinite period, "thereby virtually nullifying the time limit as any protection to a defendant against stale claims").
 

Although prevention of intentional delay in the service of summons was a primary reason for the passage of 
Rule 103(b) and its predecessor, 
a subjective test of plaintiff's intent is not required by the rule; rather, the standard used in resolving a Rule 103(b) motion is an objective test of reasonable diligence in effecting service. 
Kole v. Brubaker
, 325 Ill. App. 3d  944, 950, 759 N.E.2d 129, 134 (2001); 
Kreykes Electric, Inc. v. Malk & Harris
, 297 Ill. App. 3d 936, 940, 697 N.E.2d 885, 888 (1998); 
Phifer v. Hayes
, 20 Ill. App. 3d 635, 638-39, 314 N.E.2d 473, 475-76 (1974).  Here, plaintiff's contention that he withheld summons while awaiting the filing of his section 2–622 report does not relieve plaintiff of his duty to effect service on defendants.

We now address a legal conclusion made by the trial court when determining whether special circumstances existed.
(footnote: 6)  The trial court stated as follows:

"Further, there is no authority to support plaintiff's argument that the malpractice complaint was not 'viable' until a [section] 2–622 affidavit is obtained; under Supreme Court Rule 137, once a complaint is signed by an attorney and filed with the court, the affixation of counsel's signature on the pleading constitutes a certification by that attorney that a reasonable inquiry has been undertaken and the allegations in the complaint are true, to the best of that counsel's knowledge, information and belief.  This is sufficient to prosecute the lawsuit."

This is an accurate statement of the law.  Thus, we agree with the trial court's determination that, despite plaintiff's arguments, he had a viable cause of action against defendants when he filed the lawsuit on December 21, 2001.

Plaintiff asserts, however, that even if he served all defendants before he received the report of merit from the consulting physician, "nothing was going to transpire in the case until he also was able to file the medical reports that section 2–622 requires before a case can move forward." See 735 ILCS 5/2–622(1)(West 2000).  Section 2–622 excuses defendants from appearing or filing answers until the section 2–622 report is filed by the plaintiff (735 ILCS 5/2–622(a)(2) (West 2000)), but in no way does it excuse plaintiffs from serving defendants until the report has been filed.

Plaintiff has also attempted to justify his intentional delay by stating that if he did not have a meritorious claim against any defendants, 
he would have dismissed them – at some point.
(footnote: 7)  Nonetheless, a plaintiff cannot choose to delay serving defendants for an indefinite period while he ascertains whether he has a meritorious claim and 
then
 contend that there was no unreasonable delay because  "nothing was going to transpire in the case" until he also was able to file the section 2–622 report.
  But a
s defendants correctly note, plaintiff erroneously assumes that, if served, defendants would have taken no action to investigate the claims, retain counsel, contact insurance and hospital representatives, obtain records, and so on.  Plaintiff cannot presume what steps a defendant may take in investigating and defending a case, even prior to the filing of a section 2–622 report.
  Moreover, while it is true that the trial court had the authority to extend the period for plaintiff to file the medical report, 
by not serving defendants 
until he obtained the section 2–622 report, plaintiff prevented defendants from asserting any defenses they might have had during that time
. See, 
e.g.
, 
Hobbs v. Lorenz
, 337 Ill. App. 3d 566, 786 N.E.2d 260 (2003) (where trial court dismissed case with prejudice 
on defendant's motion
 where plaintiff's counsel did little or nothing to obtain report during 90-day extension period and allowed period to expire without seeking a further extension).

Plaintiff's proposed practice would allow an entire case to be filed and dismissed without the defendant even knowing he or she was named.  Specifically, under plaintiff's reasoning, a party would be permitted to file a lawsuit naming a defendant, not issue summons to that defendant advising him or her of the claim, and then, at some later date, dismiss the defendant due to the inability to obtain a section 2–622 report.  To follow this reasoning of "what they don't know won't hurt them" would deny defendants the right to know that they have been named in a lawsuit, not to mention denying them the protections of Rule 103(b).

Applying the objective test, plaintiff failed to exercise reasonable diligence in serving defendants.  Plaintiff's subjective view that defendants are better served if they are not summoned, even where they have already been named as defendants in a complaint, until plaintiff can assure that they may be subject to liability in the opinion of a medical expert is flawed.  Defendants are better served if they are "served."

In this appeal, plaintiff has argued that his
 counsel acted reasonably and in good faith and that 
the procedure he followed of not issuing summons until he obtained the section 2–622 report "avoided serving doctors against whom there might not subsequently be a meritorious cause of action, and thus avoided causing an unnecessary burden."  Plaintiff overlooks the fact that being labelled a defendant has also been recognized as a burden.  Indeed, in 
Bogseth v. Emanuel
, 166 Ill. 2d  507, 517, 655 N.E.2d 888 (1995), the Illinois Supreme Court explained that section 2-402 of the Code of Civil Procedure (735 ILCS 5/2-402 (West 1992)), which allows a plaintiff to designate individuals as respondents in discovery, rather than defendants, was "an innovative reform to help avoid the stigma, costs, and 
burdens
 thrust upon individuals being named defendants to litigation unnecessarily." (Emphasis added.)  As this court has explained:

 "The legislative history of section 2-402 indicates that its purpose was to provide plaintiff's attorneys with a means of filing medical malpractice suits without naming everyone in sight as a defendant.  It was believed that the label of 'defendant' in a medical malpractice suit contributed to the spiraling cost of medical malpractice insurance." 
Clark v. Brokaw Hospital
, 126 Ill. App. 3d 779, 783, 783, 467 N.E.2d 652, 655 (1984)
.

Thus, plaintiffs who wish to avoid imposing unnecessary burdens upon "doctors against whom there might not subsequently be a meritorious cause of action" can utilize section 2-402.

CONCLUSION

Plaintiff has not set forth any authority that would require or allow summons to be intentionally withheld in a medical malpractice action until a plaintiff is able to obtain a section 2–622 report.  The requirement to file a section 2–622 affidavit for medical malpractice cases does not affect plaintiff's burden to exercise reasonable diligence in serving all defendants.
  The trial court did not abuse its discretion in dismissing plaintiff's complaint for his lack of diligence in serving defendants.

For the foregoing reasons, we affirm the trial court’s judgment dismissing plaintiff's complaint with prejudice, pursuant to Rule 103(b).

Affirmed.

FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., 
concur.

FOOTNOTES
1:
Plaintiff voluntarily dismissed the Defendants 
M. Ibriham, M.D., Patricia Kurtz, M.D., William Harper, M.D., and Farr Curlin, M.D.
 and they are not parties to this appeal.

2:
We have provided a summary of only those facts necessary to understand the issues in this appeal.

3:
The affidavit must state that the plaintiff has reviewed the facts of the case with a health professional.  The health professional’s report must state that there is a reasonable and meritorious basis for filing the action and provide reasons for that conclusion.

4:
Plaintiff has mischaracterized his intentional choice not to serve defendants until he obtained the section 2–622 report as a "special circumstance."  Plaintiff has misconstrued this factor.  Nothing about the section 2–622 report affected plaintiff's 
efforts
 to obtain service.  Plaintiff intentionally made no efforts.  As the trial court correctly noted when deciding 
that defendants had made a 
prima facie
 
showing of plaintiff's unreasonable lack of diligence: "[T]he record does not disclose any unusual circumstances that would have prevented or otherwise hindered plaintiff's ability to serve defendants." 

5:
It has been noted that this factor arose in a case in the context of showing that the fact that a plaintiff actually did obtain service strongly supported the contention that he exercised reasonable diligence to obtain service and that "[o]rdinarily, factor number 7 is not listed in discussing the factors to be considered in determining whether or not plaintiff has exercised reasonable diligence."
 Segal v. Sacco
, 136 Ill. 2d 282, 295, 555 N.E.2d 719, 724 
(1990
) (Ryan, J., dissenting
).
  Again, because plaintiff was not trying to effectuate service, this factor is irrelevant here.
  

6:
The legal conclusion apparently was the basis for plaintiff's argument that we should apply a 
de novo 
standard of review.

7:
In an affidavit dated September 24, 2002, plaintiff's counsel stated that, because a health care practitioner's report could not be obtained for three of the named defendants, plaintiff intended to voluntarily dismiss these doctors.  Plaintiff voluntarily dismissed those three defendants and another unserved defendant on May 7, 2003 - approximately 14 months after filing the section 2–622 report and almost 1½ years after filing suit against them.