**NOTICE**

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 190292-U

NO. 4-19-0292

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

**FILED**
December 12, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CHAD HUSKINS, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Champaign County |
| GRAMM B. TAPLEY and KANDAS R. PARM, | ) | No. 17L79 |
|     Defendants-Appellees. | ) | |
| | ) | Honorable |
| | ) | Brett N. Olmstead, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not abuse its discretion in determining plaintiff failed to exercise reasonable diligence in serving defendant. The appellate court further denied plaintiff's request to certify a question for the Illinois Supreme Court's review, finding the request unwarranted at this time.

¶ 2    In February 2019, the trial court dismissed plaintiff Chad Huskins's claims against defendant Gramm B. Tapley pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007) for failing to exercise reasonable diligence in obtaining service. Huskins filed a motion to reconsider, which the court denied.

¶ 3    On appeal, Huskins argues the trial court erred in granting the motion to dismiss, claiming (1) he exercised reasonable diligence in serving Tapley and (2) the circuit clerk's docketing error and subsequent correction prejudiced him because it either constituted an unauthorized *nunc pro tunc* order or was made without notification to the parties and resulted in the delay in serving Tapley. Huskins also argues this court should certify a question to the

Illinois Supreme Court regarding whether Illinois public policy favoring adjudication of controversies on the merits is inapplicable in determining the exercise of reasonable diligence under Rule 103(b). We affirm the trial court's judgment and deny Huskins's request for certification.

¶ 4                                    I. BACKGROUND

¶ 5        On May 24, 2017, Huskins filed a complaint seeking to recover damages from defendants Tapley and Kandas R. Parm in connection with a June 19, 2015, auto accident. In conjunction with the complaint, Huskins requested the Champaign County circuit clerk issue summonses for both defendants. On May 26, 2017, summonses were issued and Huskins arranged for the Champaign County Sheriff's Office to serve Tapley. Separate arrangements were made to serve Parm, who is a Kentucky resident.

¶ 6        On June 7 or 8, 2017, a deputy from the sheriff's office attempted to serve Tapley at the Urbana, Illinois, address provided on the summons. The deputy was unable to complete service because Tapley had moved to Savoy, Illinois, in June 2015. The deputy promptly completed a service of process affidavit, stating Tapley had not been served because the address on the summons was "not [a] good address" and was the "wrong address." The unserved summons and affidavit were filed with the clerk's office on June 8, 2017. Although Tapley had not been served, the county clerk inadvertently entered a notation on the court's electronic docket showing service on June 8, 2017. The notation was not corrected until July 13, 2017, when new entries indicated the June 8 clerk's entry was in error and was then corrected to reflect a lack of service.

¶ 7        Sometime between June 8, 2017, and July 13, 2017, Huskins's attorney and a legal assistant for Huskins's attorney viewed the electronic court docket to determine whether

Tapley had been served. After seeing the original notation and believing service had been obtained, Huskins's attorney said he noted in his file that service had been completed. No one from the attorney's office contacted the sheriff's office, checked the actual court file, or obtained a copy of the proof of service to confirm Tapley had been served.

¶ 8        Huskins's attorney did not discover the corrected entry or realize Tapley had not been served until late April 2018, when a legal assistant brought it to his attention. Once he realized the mistake, he took steps to serve Tapley by requesting the issuance of an alias summons in May 2018. However, because the alias summons contained the same incorrect address used in the first summons, service on Tapley could not be completed. At the same time, Huskins's attorney also obtained an alias summons for Parm, who likewise had not yet been served.

¶ 9        In August 2018, Huskins sought to serve Tapley and Parm through alternative means, stating in the motion for alternative service it was his reasonable belief both defendants had taken "extreme measures to evade service." Before the court heard Huskins's motion, a "skip trace" conducted at Huskins's request found Tapley's Savoy, Illinois, address. As a result, in September 2018, the court granted Huskins leave to serve Tapley at the Savoy address through a second alias summons. The second alias summons was issued on September 12, 2018, and Tapley was served on September 14, 2018. The court also allowed Huskins to serve Parm through the Secretary of State.

¶ 10        After being served, Tapley filed a motion to dismiss the complaint against him with prejudice pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007). Tapley asserted Huskins failed to "exercise reasonable diligence in obtaining service." Tapley contended he was moving from the Myra Ridge address on the date of the accident and had lived at the

- 3 -

Savoy address for the intervening two years. Tapley also contended, after the complaint was filed in May 2017, the docket reflected no further activity in the case until the first alias summons was issued in May 2018, and it took Huskins over a year to effectuate service. Tapley also stated he was unaware of the lawsuit prior to being served and argued his address was easily discoverable since he had maintained the Savoy address as his permanent address since June 2015, reported the Savoy address to the Secretary of State, and used the Savoy address for the traffic proceedings resulting from the accident in Douglas County, Illinois (case No. 2015-TR-959). At the hearing on the motion, Tapley also indicated Huskins was not reasonably diligent because, instead of relying solely on the electronic public record to confirm service, he should have either contacted the sheriff's office or reviewed the court file to obtain a copy of the affidavit of service.

¶ 11    In his response, Huskins asserted he had acted with reasonable diligence in serving Tapley, as any delay was caused by the clerk's error, and mere inadvertence on his part did not warrant dismissal. Additionally, counsel indicated, once he knew of the correction to the erroneous docket entry, he acted quickly and served Tapley within five months of discovering the problem. At the hearing on the motion, Huskins also indicated he had actively attempted to serve Parm during the delay, rather than doing nothing to advance the case. After hearing the arguments of counsel, the trial court took the matter under advisement.

¶ 12    On February 7, 2019, the trial court entered a written order granting Tapley's motion to dismiss. The court found, after considering the facts and law at issue, Huskins had not been reasonably diligent in obtaining service. Although the court recognized Huskins "reasonably could rely on the mistaken docket entry for a time," Huskins failed to exercise reasonable diligence because he "stopped paying attention to this matter for months after the

- 4 -

mistake was corrected," causing an "excessive delay before [Tapley] was served in this case." The court reached this conclusion by considering the factors provided by our supreme court in *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371, 377, 561 N.E.2d 25, 27 (1990), which states:

> "Thus, while actual notice or knowledge of the pendency of a suit or the lack of prejudice to the defendant are significant in that they may affect the judge's determination as to whether the plaintiff was diligent, they are but two factors to be considered by the court in making that determination. Other factors include: (1) the length of time used to obtain service of process; (2) the activities of the plaintiff; (3) plaintiff's knowledge of the defendant's location; (4) the ease with which the defendant's whereabouts could have been ascertained; (5) special circumstances which would affect plaintiff's efforts; and (6) actual service on the defendant [citation], and all of these factors are to be considered with a view toward fulfilling the constitutional mandate of rendering justice fairly and promptly [citation]."

¶ 13    Specifically, the trial court noted the complaint was filed less than a month before the statute of limitations was to expire, the result of which was "almost all of Plaintiff's actions in pursuing and not pursuing service occurred after the limitations period expired." The court observed it took Huskins's attorney 16 months from the point the complaint was filed to eventually effectuate service on Tapley. While the court recognized the error in the docket as a special circumstance affecting service and considered Huskins's activities and reliance on the

docket reasonable until at least July 13, 2017, it found Huskins had still done nothing from that point until late April 2018 to either "effect service, or to prosecute his lawsuit." The court also considered Huskins's attempt to serve the first alias summons "unreasonably misdirected" and causing "a further unreasonable delay," since Huskins used the same incorrect address from the first summons, in spite of the fact the affidavit filed with the clerk, along with the unserved summons, should have alerted Huskins to the fact Tapley's address had changed. The court noted further how Tapley's address was easily obtainable from his driver's license and the court record of the traffic case resulting from the accident. The court expressly commented on counsel's assertion in the motion for alternative service filed August 29, 2018, alleging he "reasonably believed" Tapley was "taking extreme measures to evade service and withhold his identity," describing it as "an uninformed and unsupported assumption" further evidencing a lack of reasonable efforts. Additionally, the court noted, "Tapley had no knowledge of the pending lawsuit until he was served on September 14, 2018, more than three years after the collision and almost 15 months after the limitations period expired."

¶ 14 Huskins's motion to reconsider argued the trial court erred in dismissing the claims against Tapley pursuant to Rule 103(b) for three reasons: (1) he had made reasonable efforts to serve Tapley sufficient to preclude finding he was attempting to subvert the statute of limitations; (2) Illinois case law did not support a dismissal with prejudice under Rule 103(b) for "mere inadvertence"; and (3) special circumstances precluded a dismissal with prejudice where Tapley was not prejudiced by the delay in service. Huskins acknowledged there had been some delay in serving Tapley, but he asserted the delay was unintentional and, therefore, did not fall within the primary purpose of Rule 103(b), which was to prevent intentional delays in service designed to purposely circumvent the statute of limitations. He also referenced cases where, after

even longer delays, dismissals associated with inadvertent behavior were considered inappropriate, contending the trial court's dismissal was not in line with Illinois case authority. Lastly, Huskins contended his inadvertent, but understandable reliance on the electronic docket entry by the clerk, was a special circumstance justifying the delay.

¶ 15 Tapley's response to the motion again pointed to the delay between the date of the erroneous docket entry on June 8, 2017, and Huskins's claimed date of discovery of the error in late April 2018, where there was no other action taken to prosecute the case, even though Huskins would have mistakenly believed he had personal jurisdiction of Tapley. He also took exception to the representation by Huskins that he (Tapley) was "taking extreme measures to evade service and withhold his identity" in the motion for alternate service when it was merely a matter of Huskins ignoring the information available from the sheriff's department and the affidavit of non-service. Tapley contended this was further evidence of Huskins's lack of diligence.

¶ 16 During the hearing on the motion to reconsider, counsel for both parties agreed on the factual findings made in the trial court's February 2019 order. The court, providing further explanation for its ruling, distinguished *Aranda v. Hobart Manufacturing Corp.*, 66 Ill. 2d 616, 363 N.E.2d 796 (1977), cited by Huskins, from the present case because the facts were significantly different. Although there was a long delay in *Aranda*, the first attempt at service occurred under a complaint the plaintiff voluntarily dismissed and, while still within the statute of limitations period, service was quickly effectuated after the filing of a second lawsuit. The court also considered *Brezinski v. Vohra*, 258 Ill. App. 3d 702, 631 N.E.2d 345 (1994), also cited by Huskins, distinguishable from this case, since, despite a delay in service of the defendant lasting nearly two years, the plaintiff had a reason for the delay, and during the delay the plaintiff

was actively litigating the case against the codefendants. The court reemphasized that Huskins's reliance on the erroneous docket was only reasonable for a short period of time and the error did not fully explain the extensive delay. Citing *Christian v. Lincoln Automotive Co.*, 403 Ill. App. 3d 1038, 934 N.E.2d 1065 (2010), the trial court found reasonable diligence was the standard applicable to the facts at issue. After considering the parties' arguments, the court reaffirmed its prior order and denied Huskins's motion to reconsider.

¶ 17        This appeal followed.

¶ 18        II. ANALYSIS

¶ 19        A. Appellee's Brief

¶ 20        Before addressing the merits of the case, we first turn to Huskins's contention that Tapley's brief fails to comply with Illinois Supreme Court Rule 341 (eff. May 25, 2018). Specifically, Huskins argues Tapley's brief is deficient because he does not cite to the record in either his statement of facts or argument section and both contain erroneous facts. As a result, Huskins requests this court either strike or disregard the offending portions of the brief or the brief in its entirety.

¶ 21        Under Illinois Supreme Court Rule 341(i) (eff. May 25, 2018), an appellee's brief "shall conform" to the requirements prescribed under Illinois Supreme Court Rule 341(h) (eff. May 25, 2018), except such brief need not include an introductory paragraph regarding the nature of the case, a statement of the issues presented, a statement of jurisdiction, a section for "Statutes Involved," a statement of facts, or an appendix. Ill. S. Ct. R. 341(i) (eff. May 25, 2018). However, these sections may be included when "the presentation by the appellant is deemed unsatisfactory." Ill. S. Ct. R. 341(i) (eff. May 25, 2018). Where a statement of facts is included, it "shall contain the facts necessary to an understanding of the case, stated accurately and fairly

without argument or comment, and with appropriate reference to the pages of the record on appeal ***." Ill. S. Ct. R. 341(h) (eff. May 25, 2018); see also *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1100, 899 N.E.2d 582, 586 (2008) ("While an appellee is not required to submit a statement of facts (see 210 Ill. 2d R. 341(i)), if he elects to do so, he must also comply with Rule 341(h)(6)."). "This court may strike a statement of facts when the improprieties hinder our review." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 9, 969 N.E.2d 930. Further, the appellant's brief must include an "[a]rgument [section], which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). " 'The failure to provide proper citations to the record is a violation of Rule 341(h)(7), the consequence of which is the forfeiture of the argument.' [Citation.]" *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 43, 123 N.E.3d 1271.

¶ 22        Illinois Supreme Court Rules 341(h)(6) and (7) require citations to the record because "it is not our duty to search the record for material upon which to base a reversal *** [citation]." *Farwell Construction Co. v. Ticktin*, 84 Ill. App. 3d 791, 802, 405 N.E.2d 1051, 1060 (1980). However, where "the record is short and the issues are simple," the appellate court may choose to "address the issues anyway." *People v. Johnson*, 192 Ill. 2d 202, 206, 735 N.E.2d 577, 580 (2000). Similarly, even when a party's brief does not in some respects strictly adhere to the supreme court rules, where the appellate court finds the flaws were not "so serious as to interfere with [the appellate court's] ability to understand and adjudicate [the] case," the court may address the issue presented. *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 22, 51 N.E.3d 1082. Additionally, "[w]here violations of supreme court rules are not so flagrant as to hinder or preclude review," the court is not required to strike any

noncompliant portion of the brief. *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 527, 691 N.E.2d 191, 197 (1997). Instead, the court must "disregard any fact or claim not supported by the record." *Hurlbert*, 386 Ill. App. 3d at 1101.

¶ 23 In this case, Tapley's brief does not comply with Rules 341(h)(6), 341(h)(7), or 341(i). As Huskins notes, Tapley's argument section makes no reference to the record. Although Tapley's statement of facts attempts to cite to the record by referencing his appendix, which consists of documents reproduced from the record, the rules unambiguously require citations to the record, making him noncompliant with Rule 341(h)(6). However, the record overall is brief, and Tapley's violations of the supreme court rules have not interfered with our ability to review the case or understand his arguments. In addressing Huskins's arguments, we reviewed the record as a whole and Tapley's arguments are simple and clear. It is evident Tapley does not consider the clerk's erroneous notation, which is a fact fundamental to this case, a *nunc pro tunc* order, and he agrees with the trial court's use of *Christian* and its application of the factors as stated in *Womick*. Additionally, at the hearing for the motion to reconsider, Huskins agreed the facts stated by the trial court in its February 2019 order were accurate and not in dispute. The facts relied on by Tapley correspond to the trial court's recitation. To the extent his statement of facts includes any legal conclusions, those will be disregarded. See *Hall*, 2012 IL App (2d) 111151, ¶ 12 ("Mere contentions, without argument or citation to authority, do not merit consideration on appeal."). Further, as Huskins acknowledges, Tapley's arguments are essentially consistent with those already within and supported by the record. Accordingly, we will not strike Tapley's brief or any portion thereof, but we will disregard any fact or claim not supported by the record.

¶ 24 B. Clerical Error

- 10 -

¶ 25        Huskins argues the trial court's decision should be reversed because the circuit clerk's corrective docket entry was an unauthorized *nunc pro tunc* order, of which he was never made aware, and these errors resulted in the dismissal of a valid claim. Alternatively, Huskins contends, regardless of whether the corrective entry constitutes a *nunc pro tunc* order, reversal is warranted because the failure to notify him about the docketing error did not "adhere to even minimal standards and practices" and resulted in prejudice against him.

¶ 26        These arguments have been forfeited. "An appellant forfeits any arguments he failed to make in the trial court." *People v. Pettis*, 2016 IL App (4th) 140469, ¶ 25, 54 N.E.3d 337. Specifically, "[f]orfeiture applies when an issue is not raised in a timely manner. [Citation.] Issues not raised before the trial court are deemed forfeited and may not be raised for the first time on appeal." *Hoke*, 2019 IL App (4th) 150544-B, ¶ 38. The result is warranted because a party's failure to raise an argument in the trial court deprives the "trial court of the opportunity to decide the issue based on that argument. Further, the failure to make an argument deprives the appellate court of an adequate record related to the argument." *Pettis*, 2016 IL App (4th) 140469, ¶ 25.

¶ 27        Here, Huskins failed to raise these arguments with the trial court. We find nothing in the record showing Huskins previously argued or considered the corrective entry a *nunc pro tunc* order. Additionally, the record contains only two references to the idea the circuit clerk should have notified Huskins about the error. Both references are in the transcript for Huskins's motion to reconsider and reflect Huskins would have understood the trial court's reasoning in its February 2019 order if the clerk or someone from the court would have "sent a letter to us or contacted us" about the error or "indicated to us there was actually a change in the record." Neither reflect an argument, but merely an effort to explain his own inaction. By failing

- 11 -

to raise these issues in the trial court, Huskins deprived the trial court of the opportunity to rule on them, and, as a result, Huskins has forfeited review of this issue.

¶ 28                           C. Illinois Supreme Court Rule 103(b)

¶ 29         A trial court may dismiss a claim based on a plaintiff's lack of diligence in securing process of service and "[i]f the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice." Ill. S. Ct. R. 103(b) (eff. July 1, 2007). A trial court may dismiss a claim with prejudice "[i]f the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations ***." Ill. S. Ct. R. 103(b) (eff. July 1, 2007).

¶ 30                           1. *Standard of Review*

¶ 31         Before addressing the merits of Huskins's claim, we first clarify our standard of review. Huskins argues we should apply a *de novo* standard of review, as the issues in this case implicate the construction of Rule 103(b), involve the trial court's interpretation of case law, and "consist[ ] of application of the law to the undisputed facts." Tapley argues the abuse of discretion standard applies.

¶ 32         "On the merits of a motion to dismiss under the rule, the disposition is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Hagemann v. Illinois Workers' Compensation Comm'n*, 399 Ill. App. 3d 197, 204, 941 N.E.2d 878, 884 (2010), *modified on denial of reh'g* (Apr. 30, 2010). "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41, 39 N.E.3d 961. "It is always an abuse of discretion for a trial court to base a decision on an

- 12 -

incorrect view of the law." *A&R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 15, 124 N.E.3d 962.

¶ 33        While it is generally true the *de novo* standard of review applies to "issues involv[ing] the interpretation of statutes and the application of these interpreted statutes to undisputed facts," (*Central Illinois Light Co. v. Illinois Department of Revenue*, 335 Ill. App. 3d 412, 415, 780 N.E.2d 1109, 1111 (2002)), Illinois courts have consistently applied the abuse of discretion standard to review Rule 103(b) dismissals. *Lewis v. Dillon*, 352 Ill. App. 3d 512, 515, 816 N.E.2d 715, 717 (2004) (applying the abuse of discretion standard of review to a Rule 103(b) dismissal despite finding the trial court "made certain legal conclusions" and the plaintiff's argument that the *de novo* standard of review applied to a case "solely [about] the application of law to undisputed facts"); see also *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶¶ 13-14, 977 N.E.2d 1165 (noting "[c]ases subsequent to *Lewis* have also applied an abuse of discretion standard to review Rule 103(b) dismissals," and, even though the trial court made conclusions of law, refused to apply the *de novo* standard of review). As these courts have noted, the abuse of discretion standard is appropriate in cases involving undisputed facts or the interpretation of case law because, for cases involving the application of Rule 103(b), our supreme court has clearly indicated "the trial court's determination of a plaintiff's lack of diligence is 'a fact-intensive inquiry suited to balancing, not bright lines.' [Citation.]" *Lewis*, 352 Ill. App. 3d at 515. However, "[w]hen an issue involves construction of the language of Rule 103(b), our review is *de novo*." *Hagemann*, 399 Ill. App. 3d at 204.

¶ 34        Here, while Rule 103(b) is certainly implicated, contrary to Huskins's assertion, construction of the rule's language is not at issue. To any extent construction is required, the plain meaning is clear in that the rule unambiguously requires parties "to exercise reasonable

- 13 -

diligence" in serving opposing parties. See Ill. S. Ct. R. 103(b) (eff. July 1, 2007). However, Huskins does not in fact ask us to interpret the meaning of reasonable diligence in the context of the rule. Instead, the heart of his claim involves the trial court's conclusions of law and application of precedent to the facts of this case. The nature of Huskins's claim is evident from his identification of the issues, in which he states, "the court should reverse the dismissal because the plaintiff exercised diligence as to time and as to activity under the *Brezinski* precedent." In effect, he argues the facts of this case should fall within the meaning of the language of the statute as it was interpreted in *Brezinski*. This is no different than any argument a party seeks to support by citation of authority in support. It does not ask us to interpret the language of the statute, but instead to apply another court's interpretation to the facts of this case. As a result, the abuse of discretion standard applies. Accordingly, absent an abuse of discretion in this matter, we will not disturb the trial court's decision.

¶ 35                                    2. *Reasonable Diligence*

¶ 36        Huskins argues the trial court erred in finding he failed to exercise reasonable diligence to obtain service on Tapley as required by Illinois Supreme Court Rule 103(b) (eff. July 1, 2007). Specifically, Huskins contends, given the circuit clerk's error and the precedent established in *Brezinski*, he was reasonably diligent as to both the time it took to serve Tapley and his activities in litigating the case. We disagree.

¶ 37        "Rule 103(b) requires a plaintiff to act with reasonable diligence in effecting service of process on a defendant[,]" and the failure to do so requires a dismissal of the plaintiff's claim. *Billerbeck v. Caterpillar Tractor Co.*, 292 Ill. App. 3d 350, 352, 685 N.E.2d 1018, 1020 (1997). "The purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process on them and to prevent the circumvention of the statute of limitations." *Segal*

*v. Sacco*, 136 Ill. 2d 282, 286, 555 N.E.2d 719, 720 (1990). This court has also recognized Rule 103(b) was adopted to fulfill a " 'historical and constitutional mandate to render justice fairly and promptly[,]' " and reasonable diligence " 'in serving process is essential to this purpose.' " *Billerbeck*, 292 Ill. App. 3d at 353 (quoting *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273, 282, 492 N.E.2d 1322, 1326 (1986); see also *Kole v. Brubaker*, 325 Ill. App. 3d 944, 953, 759 N.E.2d 129, 136-37 (2001) ("Although controversies should ordinarily be resolved on their merits after both sides have had their day in court, a plaintiff may not complain where the dismissal resulted from [the plaintiff's] own lack of diligence in effectuating service."); *Deardorff v. Decatur & Macon County Hospital Ass'n*, 111 Ill. App. 2d 384, 390, 250 N.E.2d 313, 316 (1969) ("The desirability of resolving lawsuits by a trial on the merits is not aided where either a plaintiff or a defendant, as the case may be, does not show reasonable diligence in bringing about that result.").

¶ 38       "While prevention of intentional delay in the service of summons was a primary reason for adoption of Rule 103(b) ***, the rule is not based upon the subjective test of plaintiff's intent but, rather, upon the objective test of reasonable diligence in effecting service." *Parker v. Universal Packaging Corp.*, 200 Ill. App. 3d 882, 886, 558 N.E.2d 203, 205 (1990). The defendant must first show "the plaintiff failed to exercise reasonable diligence in effectuating service after filing suit." *Kole*, 325 Ill. App. 3d at 949. "Once the defendant establishes that the time between the filing of the complaint and the date of service suggests a lack of diligence, the burden then shifts to the plaintiff to provide a satisfactory explanation for the delay in service." *Emrikson*, 2012 IL App (1st) 111687, ¶ 17. "In the absence of a satisfactory explanation, the trial court is justified in granting a Rule 103(b) dismissal." *Emrikson*, 2012 IL App (1st) 111687, ¶ 17.

¶ 39　　　　　Here, as shown in the record, Huskins filed suit on May 24, 2017, approximately 23 months after the traffic accident, and effectuated service upon Tapley on September 24, 2018, nearly 16 months after filing his complaint. By establishing these facts, Tapley met his initial burden of showing Huskins lacked diligence in serving him. Although Huskins suggests Tapley failed to meet this burden because Huskins served Tapley only five months after discovering the circuit clerk's error, the trial court did not abuse its discretion. First and foremost, the relevant time period does not begin when Huskins eventually got around to checking on the status of the case. Additionally, "a time period of even five months between the filing of a complaint and subsequent service is sufficient to establish a *prima facie* showing of failure to diligently effect service." *Emrikson*, 2012 IL App (1st) 111687, ¶ 19. As the trial court stated, a 16-month delay "patently suggests a lack of diligence" and Huskins's reliance on the clerk's error was reasonable for only so long. Accordingly, the court did not abuse its discretion in finding Tapley met his burden.

¶ 40　　　　　It was also not an abuse of discretion for the trial court to find Huskins failed to adequately explain the delay and lacked reasonable diligence in serving Tapley. "It is [the] plaintiff's burden to demonstrate reasonable diligence," and the plaintiff must do so "factually, by affidavits in conformance with the rules of evidence." *Mayoral v. Williams*, 219 Ill. App. 3d 365, 370, 579 N.E.2d 1196, 1199 (1991). However, Rule 103(b) provides "no specific time limitation" or standards for courts to determine when a plaintiff has acted unreasonably. *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 213, 880 N.E.2d 171, 175 (2007). "Rather, a court must consider the passage of time in relation to all the other facts and circumstances of each case individually." *Case*, 227 Ill. 2d at 213. Additionally, courts may consider several factors in determining whether the plaintiff acted with reasonable diligence, including:

"(1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; (6) special circumstances that would affect plaintiff's efforts; and (7) actual service on defendant." *Case*, 227 Ill. 2d at 212-13. *Cf. Womick*, 137 Ill. 2d at 377.

¶ 41    Here, the trial court's application of the factors to the circumstances of this case was reasonable and supported by the record. First, as the trial courted noted, it took 16 months for Huskins to serve Tapley. In recognizing the circuit clerk's error as a special circumstance contributing to the delay in serving Tapley, the court did not hold the entire 16-month period against him. Instead, when the court considered the delay and special circumstance in conjunction with the other factors, the court simply did not consider Huskins's reliance on the clerk's error enough to justify the delay after the error was corrected.

¶ 42    For example, Huskins pointed to no other action or involvement in the case to explain the delay beyond his reliance upon the circuit clerk's error. The record shows no evidence of any activity occurring in the case from June 2017 until at least late April 2018. The clerk's incorrect entry cannot support a complete lack of activity during this time, particularly when parties have a duty to ensure service was proper. See *Kole*, 325 Ill. App. 3d at 953 ("Plaintiff had a nondelegable duty to deliver summons to the sheriff and to ensure that a prompt and proper return was made."); *Schusterman v. Northwestern Medical Faculty Foundation*, 195 Ill. App. 3d 632, 639, 552 N.E.2d 1178, 1182 (1990) ("It was the plaintiff's duty here to have the

- 17 -

summonses issued by the clerk and delivered for service by the sheriff or a special process server and to see that a prompt and proper return was made by the process server."); *Penrod v. Sears, Roebuck & Co.*, 150 Ill. App. 3d 125, 129, 501 N.E.2d 367, 369 (1986) (noting a "party to a lawsuit has a nondelegable duty to take all necessary steps to bring his case to a prompt conclusion[,]" including, but not limited to the "duty to see that a prompt and proper return [of service] was made by the sheriff."). Here, Huskins did none of those things. He did not check with the clerk's office to ensure there was a filed copy of the return of service, nor did he make any effort to obtain a copy for his file. He did not seek to determine whether service had been effected on Tapley personally, or merely by abode service on his behalf.

¶ 43     As the trial court noted, Huskins had received no responsive pleading or answer from Tapley even though, based on Huskins's mistaken belief, Tapley had been served with a copy of a complaint and summons indicating he had 30 days to respond. This should have been a signal to investigate the status of the matter further or pursue a default judgment before April 2018. Further, he had received no communication from Tapley's attorney, or the attorney for his insurance carrier or a representative of the insurance company, who might have sought to determine whether a settlement was possible without the need for the carrier's legal counsel to become involved. Considering the nature of the case, any plaintiff's attorney involved in this type of litigation would be familiar with the process and how, frequently, counsel for the defendant or his insurance carrier does not get involved in the case until sometime after service and frequently will contact plaintiff's counsel to see if an extension of time to respond is agreeable. None of these things had occurred in the intervening 10 months from when Huskins was under the impression service had been effected. Although Huskins argues he pursued the case during the delay by attempting to serve Parm, nothing in the record supports this assertion.

Instead, an affidavit from Huskins's attorney states the reason for the delay was the attorney's lack of knowledge about the clerk's error. Additionally, after Huskins filed the complaint, there were no further attempts to serve Parm until Huskins requested an alias summons in May 2018, which was the same time he sought an alias summons for Tapley. Without any evidence of activity or litigation in the case for nearly a year, it was reasonable for the court to consider the factors of time and activity as outweighing the effect of the special circumstance caused by the clerk's error.

¶ 44        Another important factor to the trial court was the actual ease with which Tapley's whereabouts could have been determined. Huskins initially attempted to serve Tapley at the Urbana address he provided on the accident report nearly two years earlier. At the time of the accident, Tapley was in the process of moving to the Savoy address and, shortly after the accident, started using the Savoy address as his permanent mailing address. As the court's order reflects, the court did not hold Huskins's initial reliance on Tapley's Urbana, Illinois, address against him. However, it considered Huskins's subsequent use of the address in his first alias summons unreasonable and as a factor contributing to the delay in serving Tapley. See *Dupon v. Kaplan*, 163 Ill. App. 3d 451, 455, 516 N.E.2d 727, 729 (1987) (stating a plaintiff's "efforts to obtain service through an alias summons are relevant to the question of reasonable diligence" and finding the plaintiff's unsuccessful attempts to serve the defendant at the same address "reasonable since there was no indication" the address was incorrect or the defendant could not be located there). Having learned service had not been accomplished, Huskins still did not appear to have sought to examine the actual return filed by the sheriff's department or contact the sheriff's office directly to ascertain what problems there had been with attempting service. Had

he seen the filed return, he would have found the comments of the deputy and seen the address itself was no good.

¶ 45    The affidavit completed by the sheriff's deputy clearly shows Tapley did not live at the Urbana address. When Huskins issued the first alias summons, he then had no reason to believe Tapley would be there. Presumably, if Huskins had actually read the return receipt, he would not have attempted service at the Urbana address again. Additionally, the record indicates Tapley's address was easy to locate. His mailing address had remained the same since June 2015, he had provided the Secretary of State with his changed address, court documents for his traffic violations from the accident included his Savoy address, and Huskins quickly located his address after performing the skip-trace. See *Greenwood v. Blondell*, 85 Ill. App. 3d. 186, 189, 406 N.E.2d 204, 207 (1980) (noting how the plaintiff's conduct demonstrated a lack of reasonable diligence, where, among other problems, the defendant lived "at one address for 20 months" after a car accident and "[t]here was no attempt to utilize information from the Post Office or the Secretary of State's automobile records"). Thus, the court reasonably concluded this factor weighed against Huskins. It did not go unnoticed by the court that Huskins's attorney signed a motion for alternative service which stated affirmatively, "[defendants] are taking extreme measures to evade service and withhold identity," when, as it turned out, there was no evidence whatsoever to support such a claim.

¶ 46    The trial court additionally did not abuse its discretion in determining Tapley had no knowledge about the lawsuit or weighing this factor against Huskins. While Tapley certainly knew about the 2015 accident prior to actually being served, nothing in the record shows he knew Huskins sued him. Further, the facts of the accident, from what can be gleaned from the record, are not such that it would necessarily be evident to Tapley he would be sued by Huskins.

Huskins was driving a semi-tractor trailer truck which was struck by a 2006 Mazda Tribute, after the Mazda was struck by Tapley's vehicle, a 2005 Ford Taurus. All vehicles were traveling in the same direction on an interstate highway and there are no specifics about the nature or extent of injuries or damage to Huskins or the semi.

¶ 47　　　　However, Huskins argues, regardless of what Tapley knew, the dismissal is not warranted because the prejudice to Tapley by allowing the lawsuit to proceed was less than the prejudice to Huskins by dismissal. This argument misconstrues the nature of the court's factor-based analysis and the purpose of Rule 103(b). "[T]he presence of actual knowledge and the absence of prejudice do not require this court to find reasonable diligence." *Billerbeck*, 292 Ill. App. 3d at 354. They are among two factors a court may consider, and dismissal may still be appropriate when the plaintiff's behavior otherwise lacks diligence. *Womick*, 137 Ill. 2d at 377, 381. The level of prejudice, by itself, does not eliminate consideration of the additional circumstances of the case or other factors a court is to consider. It is not as if, once Huskins claims prejudice, the other factors have no weight or merit. To the contrary, since, as noted above, Rule 103(b) was implemented to ensure prompt and fair justice, it was reasonable for the court to recognize Tapley had no expectation of being sued one year after the the statute of limitations expired. Further, having no such expectation, Tapley may not have kept or maintained any documents or other records potentially relevent to the case, nor would he know whether the vehicles or conditions of the vehicles at or shortly after the accident would have been documented or maintained. Accordingly, since Tapley could experience some level of prejudice by having to defend a claim so long after the occurence, the trial court reasonably weighed this factor against Huskins.

¶ 48          Given the 16-month delay between the time Huskins filed the complaint and served Tapley, the situation caused by the circuit clerk's error, the overall lack of activity in the case, the inexplicable issuance of an alias summons to the same address where Tapley no longer lived, and the potential prejudice to Tapley in allowing Huskins to pursue the lawsuit, the trial court reasonably concluded these factors suggested a lack of diligence that Huskins failed to satisfactorily explain. Having concluded Huskins failed to meet his burden, the trial court did not abuse its discretion.

¶ 49          Huskins also argued the trial court erred in distinguishing this case from *Brezinski* because his attorney demonstrated more diligence than the attorney in *Brezinski*. We disagree.

¶ 50          In *Brezinski*, although it took the plaintiff approximately 22 months from the day the complaint was filed to serve the defendant, the court found the trial court abused its discretion in finding the plaintiff lacked diligence in serving the defendant. *Brezinski*, 258 Ill. App. 3d at 704-05. As the court noted, "the overall period of time is but one factor to consider in determining whether an action should be dismissed for lack of diligence." *Brezinski*, 258 Ill. App. 3d at 705. Instead, the plaintiff's actions within that time period were far more significant. See *Brezinski*, 258 Ill. App. 3d at 704-05. For example, during the first 10 months after the plaintiff filed the complaint, he also made "[a]n immediate attempt to obtain service" on the defendant and issued two alias summonses to serve the defendant at his office, which the court considered reasonable "because there was no indication that this was not a correct address ***." *Brezinski*, 258 Ill. App. 3d at 705. At the same time, the plaintiff had also responded to six motions to dismiss from other defendants, which showed the "plaintiff was not idly ignoring his case." *Brezinski*, 258 Ill. App. 3d at 705. The court also considered the departure of an associate attorney from the law firm handling the plaintiff's case a condition contributing to the delay in

serving the defendant. *Brezinski*, 258 Ill. App. 3d at 705. All these circumstances led the court to conclude the plaintiff's "failure to serve was inadvertent and not an attempt to circumvent the statute of limitations." *Brezinski*, 258 Ill. App. 3d at 705.

¶ 51　　　　Huskins would have this court look to the overall time period and the clerk's error, consider these circumstances as the only factors at work, and then, in comparing the case to *Brezinski*, find reasonable diligence. However, as the appellate court in *Brezinski* and the trial court here recognized, there are other factors at work and all the relevant circumstances need consideration. This is how the trial court proceeded. Although the trial court recognized the length of the time gap as similar to *Brezinski*, consideration of the other aspects of the case caused it to find Huskins's activities during the gap distinguishable. Unlike *Brezinski*, where the plaintiff's attorney had not remained idle by making service attempts to viable addresses and litigating other aspects of the case, the court determined "literally nothing" happened in this case from at least July 2017 until April 2018. Even with the clerk's error, the court found nothing reasonably explained the delay or Huskins's lack of activity in the case. The court also noted the next point of activity occurred when an alias summons was issued to Tapley using the same incorrect address, which Huskins should have known would not result in service. The record supports the trial court's findings and distinctions. As a result, it was reasonable to conclude Huskins's behavior amounted to more than a mere inadvertence and instead constituted a lack of diligence. Accordingly, Huskins failed to prove the court abused its discretion.

¶ 52　　　　　　　　D. Certification to the Illinois Supreme Court

¶ 53　　　　Huskins also asks this court to grant a certification of importance under Illinois Supreme Court Rule 316 (eff. July 1, 2017), arguing, contrary to *Christian*, 403 Ill. App. 3d 1038, Illinois's public policy favoring adjudication of controversies on the merits should be a

factor in determining whether a party exercised reasonable diligence in obtaining service. We decline to do so.

¶ 54      Under Illinois Supreme Court Rule 316 (eff. July 1, 2017), an appellate court may certify questions of appropriate importance to the supreme court for its review. It is a power appellate courts should use "very sparingly." *Watson v. J.C. Penney Co.*, 237 Ill. App. 3d 976, 980, 605 N.E.2d 723, 726 (1992). A party may make an application for a certificate of importance within a petition for rehearing or "by filing a petition *** with the clerk of the Appellate Court within 35 days after the entry of the judgment appealed from if no petition for rehearing is filed ***." Ill. S. Ct. R. 316 (eff. July 1, 2017). "As such, Rule 316 provides that a party should seek certification after this court renders an opinion on the merits adverse to that party, and certification should be requested either in a petition for rehearing or in a separate petition, but not in the initial appellate brief ***." *Clark v. Illinois State Board of Elections*, 2014 IL App (1st) 141937, ¶ 32, 17 N.E.3d 771.

¶ 55      In this case, Huskins has requested we certify a question to the supreme court only through his initial appellate brief. Since Huskins has not followed the procedures required by Rule 316 in making his request, we deny certification at this time.

¶ 56      Lastly, although we do so reluctantly, we would be remiss if we did not mention the unnecessarily disparaging comments contained in Huskins's reply brief. We refer counsel to the language of *In re Marriage of Milovich*, 105 Ill. App. 3d 596, 599, 434 N.E.2d 811, 814 (1982):

> "We emphasize that we disregard irrelevant and inflammatory
> material in reaching our determination of the issues presented.
> Nevertheless, some of the comments and argument in appellant's

brief are inaccurate, highly improper and far exceed the bounds of zealous advocacy. We express our disapproval to remind counsel that the first purpose of the appellate brief is to inform the court of the facts, objectively, and then to persuade the court of a particular application of the law to the facts."

There was no useful purpose served by the language and tone of Huskins's reply, and counsel does a disservice to himself and the art of thoughtful legal advocacy in the process.

¶ 57                              III. CONCLUSION

¶ 58          For the reasons stated, we affirm the trial court's judgment.

¶ 59          Affirmed.